UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ALI BAHAR,** | : | CASE NO. C-1-01-798 |
| | : | |
| **Plaintiff** | : | Judge Dlott |
| | : | |
| vs. | : | |
| | : | **DEFENDANT'S MOTION FOR** |
| **CITY OF CINCINNATI,** | : | **SUMMARY JUDGMENT** |
| | : | |
| **Defendant** | : | |

Defendant City of Cincinnati (hereafter, "City") respectfully moves this Court for an order granting summary judgment as to all of Plaintiff's claims against it pursuant to Rule 56 of the Federal Rules of Civil Procedure. Since there are no genuine issues of material fact, the Defendant is entitled to judgment as a matter of law. A memorandum in support is set forth below and incorporated herein.

                                                              Respectfully submitted,

                                                              JULIA L. McNEIL (0043535)
                                                              City Solicitor

                                                              */s/ Augustine Giglio*
                                                              AUGUSTINE GIGLIO (0031911)
                                                              Assistant City Solicitor
                                                              Room 214, City Hall
                                                              801 Plum Street
                                                              Cincinnati, Ohio 45202
                                                              (513) 352-3339
                                                              Fax: (513) 352-1515
                                                              E-mail: gus.giglio@cincinnati-oh.gov
                                                              Trial Counsel for Defendant

**MEMORANDUM IN SUPPORT**

**I.   INTRODUCTION**

This case involves claims of national origin discrimination, retaliation and violations of public policy under both state and federal law.  The Plaintiff, a current employee of the City of Cincinnati through the Metropolitan Sewer District (hereafter, "MSD"), filed two separate complaints on November 20, 2001 and September 27, 2002 (hereafter referred to as "Pl.'s Compl. 1" and "Pl.'s Compl. 2" respectively).  The first complaint alleges that the Plaintiff was discriminated against because of his national origin while the second complaint alleges that the Plaintiff was not hired for the position of Facilities Manager in General Services for the City, which the Plaintiff perceived to be based on discrimination and retaliation.  In addition, Plaintiff filed discrimination charges with the City of Cincinnati EEO Office and the Equal Employment Opportunity Commission.

Plaintiff was never treated differently than other similarly situated employees or subjected to a hostile environment based on his national origin.  Furthermore, Plaintiff suffered no adverse employment action or retaliation during his employment.   As a result, there remain no questions of material fact and this matter should be dismissed as a matter of law.

**II.   STATEMENT OF FACTS**

Plaintiff Ali Bahar has been employed with the Defendant, the City of Cincinnati, through the Metropolitan Sewer District since 1988.  (Pl.'s Compl. 1, ¶8; Deposition of Ali Bahar, p. 9, ¶¶3-4, hereafter "Bahar Depo.")  He was originally hired as an Engineer-In-Training or "EIT."  (Deposition of Julia Johnson, Exhibit 1, hereafter "Johnson

Depo.")  State law requires that an EIT obtain a professional engineer's license within ten years; otherwise the EIT must be moved to a different position with the title of Civil Engineering Technician, Senior Technician or Senior Engineering Technician.  (Johnson Depo., pp. 29-30.)  Because Plaintiff did not receive the license within ten years, he and several other similarly situated MSD employees were laterally moved into other departments, but retained the same pay as prior to the moves.  (Deposition of Patrick Karney, p. 16, hereafter "Karney Depo.")   Since 2000, the Plaintiff has been a Senior Engineering Technician at MSD.  (Bahar Depo., p. 16, ¶¶13-14.)

       Plaintiff alleges he was discriminated against because: (1) no American-born employees who were given verbal approval of project orders were disciplined; (2) his job responsibilities were taken away from him and he was treated differently than similarly-situated, less qualified American-born individuals; (3) an American-born employee with less education and qualifications was hired to perform Plaintiff's previous job duties; and (4) he was isolated at the workplace, often given nothing to do.  (Pl.'s Compl. 1, ¶¶17, 22-23, 25.)  Also, Plaintiff asserts the City's failure to place him in the position of Facilities Manager and to promote him to CET-5 level constitutes national origin discrimination.  (Pl.'s Compl. 2, ¶15; Bahar Depo., p. 43, ¶¶4-6.)  Specifically, Plaintiff alleges that the City has engaged in a pattern and practice of national origin discrimination and retaliation.  (Pl.'s Compl. 1, ¶26.)  In addition, he alleges that the decision to promote the acting Facilities Manager to the permanent position gave the acting Facilities Manager an advantage over other applicants, and that the policy was illegal.  (Bahar Depo., p. 231, ¶¶1-21.)

During his employment, the Plaintiff has received consistent raises and never had a decrease in pay. (Bahar Depo., p. 119, ¶¶6-8 and p. 203, ¶¶6-12.) On October 24, 1999, Plaintiff received his only written reprimand from his supervisor at the time, Tony Huang. (Karney Depo., p. 61.) The reprimand was for his failure to follow MSD/City policies and procedures regarding obtaining a supervisor's authorization for a $160,000 purchase change order to a work contract. (Karney Depo., p. 61, ¶¶1-7, Exhibit 1; Deposition of Robert Campbell, p. 12, hereafter "Campbell Depo.") The City requires engineers to obtain supervisor approval prior to expending additional monies, especially since projects cannot exceed their appropriated amounts. (Deposition of Thomas Quinn, p. 37, ¶¶3-9 and p. 43, hereafter "Quinn Depo.") Violations of such procedures justify employee discipline. (Quinn Depo., p. 43, ¶¶12-24.)

Plaintiff also alleges that the City failed to automatically promote him when he received his professional engineer's license. (Bahar Depo., p. 12, ¶¶7-12.) However, he misunderstood the City of Cincinnati Civil Service Commission's policy of promotion. The Civil Service Commission has broad latitude in handling promotions. Aside from passing the professional engineer's examination, the person typically must sit for a promotional exam, be on the list of people eligible for promotion (a list which can include outside applicants as well), and the Commission attempts to match the eligible person with a position. (Karney Depo., pp. 33-40.) In the Plaintiff's situation, the Plaintiff was promoted without having to take the promotional examination. (Karney Depo., Exhibit 7.)

As of the filing of this Motion, Plaintiff is still employed with MSD in the same capacity. Since assuming his current position he has not received any disciplinary actions

4

and has not been penalized in any way for his filing of administrative charges or his lawsuit. Also, Plaintiff alleges he has received outstanding performance evaluations and has received merit increases. (Pl.'s Compl. 1, ¶¶10-11.)

### III.     LEGAL ARGUMENT

#### A.     Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted when the following three factors are met:

(1)    no genuine issue as to any material fact remains to be litigated;
(2)    the moving party is entitled to judgment as a matter of law; and
(3)    it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made.

Civ.R. 56 (C); and *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 375 N.E.2d 46. Moreover, in deciding a motion for summary judgment, all competing evidence and inferences must be construed in favor of the nonmoving party. Civ.R. 56(E); and *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 256, 106 S.Ct. 2505.

The initial burden is on the party moving for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St. 3d 280, 662 N.E.2d 264. For the City to successfully satisfy this burden, the City as the moving party must: (1) inform the trial court the basis of its motion, and (2) identify the pertinent portions of the record which demonstrate the absence of a genuine issue of material fact regarding the essential elements of the nonmoving party's claims. *Id.* at 293.

### B.  **Plaintiff Cannot Establish the Elements of His Discrimination Claims**

The Plaintiff's complaints contain allegations of national origin discrimination. In count one of the first complaint, he alleges that based on his Iranian nationality, the City treated the "Plaintiff differently from similarly-situated, less qualified employees of American origin, demoted Plaintiff, isolating Plaintiff, taking away his job duties and engaging in a pattern and practice of national origin discrimination." (Pl.'s Compl. 1, ¶¶ 30-31.)  Similarly in count one of the second complaint, he alleges that the City refused "to place Plaintiff into the position of Facilities Manager," and the City engaged "in a pattern and practice of national origin discrimination and retaliation…in violation of Title VII of the Civil Rights Act of 1964, as amended." (Pl.'s Compl. 2, ¶20.)  In count two, Plaintiff alleges that the actions of the Defendant in treating him differently because of his nationality are "in violation of O.R.C. §§ 4112.02 and 4112.99." (Pl.'s Compl. 1, ¶38; Pl.'s Compl. 2, ¶26.)  In count three, Plaintiff alleges that the City retaliated against him for filing charges with the Equal Employment Opportunity Commission by "demoting him, isolating him, taking away his job responsibilities, and by treating Plaintiff less favorably than similarly-situated, less qualified individuals" and refusing to place the Plaintiff in the Facilities Manager position. (Pl.'s Compl. 1, ¶43; Pl.'s Compl. 2, ¶31.)  Lastly, in count four, Plaintiff alleges that the City's retaliation violates O.R.C. § 4112.02. (Pl.'s Compl. 1, ¶46; Pl's Compl. 2, ¶35.)

### 1.  **Standard of Review for Title VII Claim**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or **national origin**." 42 U.S.C. § 2000e-2(a)(1)(emphasis added). According to the United States Supreme Court, a Title VII claim may be proven by showing direct, indirect or circumstantial evidence. *See Texas Dept. of Comm. Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089; *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817; and *Manzer v. Diamond Shamrock Chems. Co.* (6th Cir. 1994), 29 F.3d 1078. When a plaintiff cannot present any direct evidence of discrimination, the plaintiff must prove his claim through circumstantial evidence in order to establish a prima facie case of discrimination.

A prima facie case is made by introducing evidence sufficient to support a finding that: (1) the plaintiff was a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position; and (4) a person not in the protected class replaced the plaintiff. *Manzer*, 29 F.3d at 1081-1084. Once a prima facie case of discrimination has been established, the burden shifts to the defendant to set forth a non-discriminatory reason for its action before the burden shifts back to the plaintiff to produce evidence that the proffered non-discriminatory reason was pretextual. *Id.* at 1081-1084.

In this case, the Plaintiff can clearly show that he is a member of a protected class (Iranian nationality) and that he was qualified for the position. However, the Plaintiff cannot show that he suffered any adverse employment action and that a member not in the protected class <u>replaced</u> him. (emphasis added). All of the EITs who failed to obtain a professional engineer's license within ten years were reclassified as Senior Engineering Technicians, which had no impact on their salary. (Johnson Depo., Exhibit 2.)

    a.  **Plaintiff Did Not Suffer an Adverse Employment Action**

In *Hollins v. Atlantic Co,* (6th Cir. 1999), 188 F.3d 652, the court noted the requirements for establishing a materially adverse employment action as being:

> [M]ore disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* at 662. The Sixth Circuit has consistently held that de minimus employment actions are not materially adverse, and thus, not actionable. *See, e.g., Id.* at 662 (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); *Jacklyn v. Schering Plough Healthcare Prod.* (6th Cir. 1999), 176 F.3d 921, 930 (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved were materially adverse employment actions"); *Jackson v. City of Columbus* (6th Cir. 1999), 194 F.3d 737 (holding that police chief's suspension with pay was not an adverse employment action); and *Kocsis v. Multi-Care Management* (6th Cir. 1996), 97 F.3d 876, 885 (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

Applying these previous Sixth Circuit holdings to the Plaintiff's claims clearly demonstrates that he cannot establish a materially adverse employment action. The Plaintiff's situation is similar to *Kocsis* in that he was reassigned a new position pursuant to Ohio law (due to the his failure to obtain a professional engineer license within ten years) that provided similar pay and benefits. He is still currently employed with MSD.

There was no demotion in Plaintiff's wages, benefits or in job title. Plaintiff alleges that he suffers from "mental demotion," from not having consistent job responsibilities in his position and by having a lack of work, neither of which cannot be objectively measured by the criteria established in *Hollins*. (Bahar Depo., pp. 200-201.)

### b. **Plaintiff Was Not Treated Differently Than Similarly Situated Employees**

To establish disparate treatment, Plaintiff must show that he was treated differently than similarly situated employees because of his national origin. He must produce evidence that the relevant other employees are "similarly situated in all respects." *Mitchell v. Toledo Hosp*. (6th Cir. 1992), 964 F.2d 577, 583. Moreover, to be deemed "similarly situated," the individuals with whom Plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or the City's treatment of the Plaintiff. *Id*. at 583.

Plaintiff cannot establish that he was treated differently than similarly situated non-minority employees. He admits that no one in his division who was similarly situated as him became a Project Manager. (Bahar Depo., p. 13, ¶¶9-17.)

Plaintiff also alleges that several other Caucasian engineers took the same liberties with the authorization process and failed to obtain supervisor written approval. However, upon review, the EEO discovered that all these employees followed procedures and sought approval and authorization for such changes. (Karney Depo., Exhibit 5.)

9

Also, of the six EITs that had failed to obtain the professional engineer's license within the ten years, Plaintiff was in violation of the limit the longest and therefore was laterally moved to a position where there was critical need. (Karney Depo., Exhibit 5.)

Plaintiff has alleged that the Defendant City, hired an American born employee with less education and qualifications to perform his previous job duties. (See ¶23 of Plaintiff's Complaint). The individual hired, however, was in the position of a Senior Engineer, which required a PE or Professional Engineer's License, a qualification Plaintiff acknowledges he did not possess. (See Bahar Depo. At p. 208).

### c. **Plaintiff Cannot Establish a Prima Facie Case of Retaliation**

Plaintiff also alleges that he was retaliated against in violation of state and federal law. In order to prove actionable retaliation under state and federal law, Plaintiff must demonstrate: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant took adverse employment action after exercising the protected right or plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and adverse employment action or harassment. *Petty v. DHL Airways, Inc.* (S.D.Ohio 2001), 176 F. Supp.2d 773.

Plaintiff cannot establish the third and fourth prongs of a prima facie case. As discussed above, he suffered no materially adverse employment action. There is no evidence beyond Plaintiff's unsupported speculation to establish any connection between his filing of an EEO charge with any adverse actions he claims were material.

Plaintiff alleges Defendant retaliated against other employees. Specifically, the two employees, a Chinese American and an Indian American were retaliated against for

supporting Plaintiff's claims of national origin discrimination. (Bahar Complaint, ¶24). Neither are parties to this action. Basically, Plaintiff appears to be claiming that alleged retaliation against others is retaliation against him. Even assuming arguendo that such a claim exists, the uncontroverted facts reflect no adverse employment action against such individuals. The transfers involved with these two employees resulted in no loss of pay or benefits. (Bahar depo. at p. 211 and p. 217). In addition, the Chinese American employee actually received higher pay and outstanding performance evaluations (Bahar depo. at p. 213).

### 2. No Evidence Exists to Establish a Valid Claim Under O.R.C. 4112 et seq.

Plaintiff also alleged state claims under O.R.C. 4112 (A) and Ohio public policy violations. For each of the reasons Plaintiff's claims fail under Title VII, Plaintiff's claims under O.R.C. 4112 et seq. and Ohio public policy must also fail. The Ohio Supreme Court has held that trial courts should apply Title VII federal case law to interpret issues in cases brought pursuant to R.C. Chapter 4112. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St. 3d 601, 575 N.E.2d 1164.

With no actionable federal claim before it, this Court has no jurisdiction to hear a purely state law claim. Therefore, Plaintiff's state claims must be dismissed as well.

### IV.   CONCLUSION

There being no genuine issue as to any material facts and having demonstrated that it is entitled to judgment as a matter of law, the City of Cincinnati respectfully requests an order granting summary judgment with respect to Plaintiff's claims and Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ AUGUSTINE GIGLIO
AUGUSTINE GIGLIO (0031911)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3339
FAX: (513) 352-1515
E-mail: gus.giglio@cincinnati-oh.gov
Trial Counsel for Defendant


**CERTIFICATE OF SERVICE**

I hereby certify that on November 7th, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kelly Mulloy Myers, counsel for Plaintiff, Freking & Betz, 215 East Ninth Street, Fifth Floor, Cincinnati, Ohio 45202 .

/s/ AUGUSTINE GIGLIO
Augustine Giglio (0031911)
Assistant City Solicitor
Attorney for Defendant
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3339
Fax: (513) 352-1515
e-mail: gus.giglio@cincinnati-oh.gov

MSD-598-AG/(gec)