## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ALI BAHAR | : | Case No. C-1-01-798 |
| | : | J. Dlott |
| Plaintiff, | : | |
| | : | |
| vs. | : | **PLAINTIFF'S MEMORANDUM IN** |
| | : | **OPPOSITION TO MOTION FOR** |
| CITY OF CINCINNATI | : | **SUMMARY JUDGMENT** |
| | : | |
| Defendant. | : | **ORAL ARGUMENT REQUESTED** |

## I.    INTRODUCTION

Ali Bahar filed his Complaint on November 20, 2001, alleging claims of national

origin discrimination under federal and state law, retaliation under federal and state law,

promissory estoppel, and wrongful discharge in breach of Ohio public policy.  On

September 27, 2002, Bahar filed a second Complaint alleging claims of national origin

discrimination under federal and state law, retaliation under federal and state law, and

wrongful discharge in breach of Ohio public policy.  On February 11, 2003, this Court

consolidation the two matters.

On November 7, 2003, Defendant filed a Motion for Summary Judgment with

respect to all of Plaintiff's claims.  As will be demonstrated below, Plaintiff can establish

genuine issues of material fact with regard to his claims; therefore, summary judgment as to

the matters must be denied.

## II.    STATEMENT OF FACTS

Plaintiff was born in Iran and immigrated to the United States to attend college.

(Bahar Dep. at 7-8.)  Plaintiff became employed by the Metropolitan Sewer District of the

City of Cincinnati ("MSD") in 1988.  (Bahar Dep. at 9.)  Plaintiff began his tenure with

MSD in the Wastewater Treatment Division.  Id.  He worked as a Mechanical Engineer in

operation and maintenance of the treatment processes.  Id.  In 1992, Plaintiff was recruited

to work in a new division called Planning and Program Management.  Id.  Tom Quinn,

Director of MSD, promised Plaintiff that he would be given the title, the salary and benefits

of Project Manager, in the soon-to-be-created Planning and Program Management Division.

(Bahar Dep. at 9-10.)

Quinn established the Planning and Program Management Division in 1992-1993 in

order to ensure that more of the projects that had been planned were actually built.  (Niehaus

Dep. at 9-10.)  Quinn told his assistant director, Joseph Niehaus, to recruit the best people

possible to fill the positions available in the new division.  (Niehaus Dep. at 11).  Neihaus

recruited Plaintiff into the new department.  (Niehaus Dep. at 9).  Plaintiff was classified as

an engineer in training, and he worked as a Project Manager.  (Niehaus Dep. at 12-13.)

Employees in the division with different titles and different pay rates were all performing the

same tasks and had the same job responsibilities.  (Niehaus Dep. at 12-13, 15).  Niehaus

testified that Plaintiff was one of the top two employees in this division.  (Niehaus Dep. at

21-22).  Quinn confirmed that Plaintiff was one of the top performers in the department.

(Quinn Dep. at 27-28.)

Quinn promised Plaintiff that he would receive the title of Project Manager with

backpay.  (Bahar Dep. at 10, Huang Dep. at 61-62.)  Plaintiff never received the title or

compensation of Project Manager even though he faithfully performed the duties of the

position.  (Bahar Dep. at 13, Donepudi Dep. at 37-38.)

Quinn resigned as Director of MSD in 1998 and was replaced by Patrick Karney.

(Quinn Dep. at 6).  Niehaus retired from MSD as Assistant Director in 1998, and was

replaced by Robert Campbell.  (Niehaus Dep. at 6, Campbell Dep. at 6).  The change in

administration resulted in a starkly different workplace for Plaintiff.

On or about August 18, 2000, the Defendant reclassified Plaintiff and five other

2

employees from the position of Engineer in Training to Senior Engineering Technician. (Johnson Dep., Exs. 2 and 3.)  The Senior Engineering Technician position is also known as a Civil Engineer Technician IV ("CET-4").  (Campbell Dep. at 37.)  The articulated reason for the change in classification for Plaintiff and his co-workers was that they had served in the position of Engineer in Training longer than the maximum allowed time of 10 years. (Johnson Dep., Ex. 2.)  At the time of the reclassification, Plaintiff was transferred to the Wastewater Collection Division.  (Campbell Dep. at 38.)

Plaintiff had no input into the decision to transfer him from the Wastewater Collection Division to the Wastewater Collection Division.  (Campbell Dep. at 38.)  Plaintiff believes that the transfer to the Wastewater Treatment Collection Division was punitive in nature and advised the Defendant of his concerns.  (Karney Dep. at 45.)  Plaintiff advised the Defendant that he was the only Engineer in Training that had been reclassified to also have been transferred to another Division other than Sohail Saeed, a Pakistan born employee.  (Bahar Dep. at 30-31, Johnson Dep., Ex. 4.)  Plaintiff advised the Defendant that "as of Monday, August 21, 2000, I have reported to Wastewater Collection with the new responsibility of overseeing manhole rehabilitation program.  I feel that discrimination is the only factor in how Mr. Huang, Mr. Donepudi and I have been treated."  (Johnson Dep., Ex. 4.)

Julia Johnson, Superintendent for MSD (Johnson Dep. at 6), testified that she was aware of Plaintiff's concerns, that she did nothing to investigate Plaintiff's concerns regarding his transfer to Wastewater Collection, and that it was her role to investigate claims of discriminatory treatment "if there is an issue."  (Johnson Dep. at 43-44.)

The Wastewater Collection position was a less desirable position than the position in Wastewater Engineering previously held by Plaintiff.  Wastewater Collection was referred to

3

as "the hole" and the department was considered a "punishment place." (Bahar Dep. at 38-39.) Campbell concedes that the Wastewater Engineering Department was considered more valuable than the Wastewater Collection Department. (Campbell Dep. at 47.) Plaintiff was given no office furniture and had to sit on a table for a few weeks. (Bahar Dep. at 39.) When Plaintiff inquired about the arrival of his office furniture, no one would tell him when or if he was going to get any. (Bahar Dep. at 39.) Additionally, Plaintiff was not given meaningful work to do while in Wastewater Collection. For example, Plaintiff was assigned the tasks of making maps of sewer systems, work which was normally assigned to CET-1 and CET-2 employees. (Bahar Dep. at 200-201.) These responsibilities were vastly inferior to his previous duties as Project Manager. Plaintiff was not performing any engineering work as a CET-4. (Bahar Dep. at 38.)

Plaintiff received his Professional Engineer's license in February, 2002. (Johnson Dep. Ex. 5). The Professional Engineer's license is a license administered by the state of Ohio. (Karney Dep. at 18.) Historically, an MSD employee was automatically promoted to the position of Senior Engineer upon acquisition of the Professional Engineer's license. (Niehaus Dep. at 20, George Dep. at 52.) Campbell, however, balked at promoting Plaintiff. (Bahar Dep. at 47-48.)

After two months, on or about March 31, 2002, Plaintiff was promoted to the position of Senior Engineer pursuant to the order of the Civil Service Commission and transferred to the Stormwater Management Division (Bahar Dep. at 221, Karney Dep. at 33). Typically, employees received a ten percent raise in compensation upon promotion to Senior Engineer. (Bahar Dep. at 50.) Plaintiff received only a five percent raise in compensation. (Bahar Dep. at 50.) At the time Plaintiff received his Professional Engineer's license, there were at least two project manager positions open in mechanical engineering, Plaintiff's area of

4

expertise.  (Bahar Dep. at 48.)  Plaintiff, however was transferred the Stormwater Management Division, a separate division of the Department of Sewers. (Karney Dep. at 85.)

Plaintiff is currently in the Stormwater Management Division (George Dep. at 17). Plaintiff's immediate supervisor, Sam George, has been pleased with Plaintiff's work. (George Dep. at 36.)

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment may only be granted if there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one element of Plaintiff's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If Defendant meets its burden, Plaintiff must then present evidence that reveals a genuine issue for trial. Id.  This Court must accept Plaintiff's evidence as true and draw all reasonable inferences in his favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986), viewing all facts and inferences drawn therefrom in the light most favorable to Plaintiff.  DePiero v. City of Macedonia, 180 F.3d 770, 776 (6th Cir. 1999). When deciding a Rule 56 motion, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing, 530 U.S. 133, 151 (2000).  "That is, the court should give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendant] that is *uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses*." Id. (emphasis added).

It is well-recognized that when the motivation, intent, or state of mind of the Defendant

5

is at issue, summary judgment is rarely appropriate, so that the trier of fact may resolve the dispute over motive.  Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001) ("that question -- i.e. the employer's motive - is one rarely susceptible to resolution at the summary judgment stage); see also, Canitia v. Yellow Freight System, Inc., 894 F.2d 196, 199 (6th Cir. 1990) (every reasonable and favorable inference should be given to Plaintiff's version or allegations of discriminatory intent); Gallo v. Prudential Residential Services L.P., 22 F.3d 1219 (2d Cir. 1994) (summary judgment is drastic remedy in discrimination cases and should be granted only sparingly).

### B.    Plaintiff Has Presented Evidence Which Establishes At Least A Genuine Issue of Material Fact With Respect To His Claims Of National Origin Discrimination.

Federal and Ohio law prohibit national origin discrimination in employment decisions. 29 U.S.C. §623; O.R.C. §4112.02(A).  Plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997).  "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." Id.

Under the circumstantial evidence approach, Plaintiff may create a presumption of discrimination pursuant to the McDonnell Douglas framework by proving the following elements: (1) he was a member of a protected class; (2) he was qualified for the job he held; (3) he suffered an adverse employment action; and (4) he was replaced by or treated differently than similarly situated employees outside the protected class.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998); Ohio Civil Rights

Commission v. Ingram, 69 Ohio St.3d 89, 92 (1994) (Ohio courts apply federal law on state discrimination claims).

If Plaintiff succeeds in establishing a *prima facie* case, Defendant must present some legitimate, nondiscriminatory reason for the termination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Once Defendant meets this burden of production, Plaintiff must then show that Defendant's articulated reason for the termination is a pretext for national origin discrimination. Id. at 507. In Hicks, the Court stated:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, [n]o additional proof of discrimination is required.

Id. at 511 (emphasis in original; footnote and citation omitted). Thus, the employee need not produce *additional* evidence of discrimination. As the Supreme Court clarified in Reeves v. Sanderson Plumbing, 530 U.S. 133, 149 (2000), a plaintiff's *prima facie* case combined with sufficient evidence to find that the employer's asserted justification lacks credibility will permit the trier of fact to infer that the employer was motivated by unlawful discrimination. In Reeves, the Supreme Court unanimously and authoritatively rejected the pretext-plus approach that several circuits had used previously in ruling on motions for summary judgment. Id. at 140-41. The Court held that the Fifth Circuit had "erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." Id. at 149.

In this case, Defendant concedes that Plaintiff's Iranian nationality makes him a member of a protected group and that Plaintiff was qualified for the positions he held. (Def. MSJ at 7). Defendant argues, however, that Plaintiff cannot show that he suffered any adverse employment action or that he was treated differently than members of the

unprotected class.  Id.

> **1.    Plaintiff Can Establish That He Was Subject to a Materially Adverse Employment Action When Defendant Stripped Him of Many Job Duties And Refused to Assign Work to Him.**

Defendant's argument that Plaintiff did not suffer an adverse employment action is without merit.  Defendant cites the Sixth Circuit standard for determining if an employee suffered an adverse employment action.  Hollins v. Atlantic Co., 188  F.3d 652 (6th Cir. 1999).

> [M]ore disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Id.

In the case at bar, the sworn testimony of Plaintiff and several witnesses creates, at the very least, a genuine issue of material fact as to whether Defendant stripped Plaintiff of a significant portion of his job duties when it transferred him to Wastewater Collection and whether Defendant refused to replace those duties with meaningful assignments.

According to Plaintiff's sworn testimony, his supervisors gave him few projects on which to work and Defendant quickly took those projects away from him (Bahar Dep. at 35, 200-201).   Defendant did finally assign to a project to Plaintiff making sewer maps which is work normally assigned to CET-1 and CET-2 employees.  (Bahar Dep. at 201).  Plaintiff testified that MSD employees referred to Wastewater Collection as "the hole" and considered it a "punishment place."  (Bahar Dep. at 38-39).  Upon his transfer to Wastewater Collection, Defendant did not supply Plaintiff with a chair, forcing him to sit on his desk for the first week he was there.  (Bahar Dep. at 39-40).  When Plaintiff attempted to obtain a

chair, Wastewater Collection personnel told him that they did not have any chairs that Plaintiff could use and they did not know when any chair would be ordered for him. (Id.). Plaintiff did not perform any engineering work as a CET-4.  (Bahar Dep. at 38.)

Defendant's reliance on <u>Kocsis v. Multi-Care Management, Inc.</u>, 97 F.3d 876 (6th Cir. 1996) is also misplaced.  The <u>Kocsis</u> court held that job reassignments without salary cuts or work hour changes do not ordinarily constitute adverse employment decisions.  97 F.3d at 885.  However, the Kocsis court agreed that a materially adverse employment action may be indicated if an employee can demonstrate significantly diminished material responsibilities as Plaintiff in this case has shown.  Id. at 886.

Plaintiff has established at least a genuine issue of material fact regarding whether Defendant's actions in stripping Plaintiff of all meaningful job duties and effectively derailing his career path is an adverse employment action.  Summary judgment is therefore inappropriate on these grounds.

### 2.    Plaintiff Can Demonstrate He Was Treated Less Favorably Than Employees Outside The Protected Class.

Defendant's argument that Plaintiff cannot demonstrate that he was treated differently than similarly situated employees outside the protected class must fail.  The Sixth Circuit has rejected an exceedingly narrow interpretation of the similarly situated standard. <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344 (6th Cir. 1998).  To make a comparison of Plaintiff's treatment to that of an employee outside the protected class, Plaintiff must show that he and the comparator employees are "similarly situated in all *relevant* respects." <u>Id</u>. at 352 (emphasis added).  This Court must make an independent determination of the relevancy of a particular aspect of Plaintiff's employment status and that of the non-protected employee.  <u>Id</u>.  Plaintiff need not demonstrate an exact correlation with the comparator

employee, but must show only that they are similar in all respects that are relevant to the employment decision at issue. Id. For instance, it is not even necessary that the comparator employees hold jobs that were identical to the job Plaintiff had. Id. at 353.

Defendant notes that with respect to the one and only disciplinary action Plaintiff received during his tenure at MSD, Plaintiff alleges that several other American born, Caucasian employees engaged in the same conduct and were not disciplined. (Def. MSJ at 9). Defendant issued a written warning to Plaintiff on or about July 10, 2000 stating that Plaintiff had failed to follow proper procedure in modifying a design contract. (Huang Dep. Ex. 3.) Plaintiff maintained that he had received approval from then Director Quinn to modify the design contract. (Bahar Dep. at 73-74.) Plaintiff further maintained that other American born employees has received permission to modify orders and were not disciplined. (Bahar Dep. at 79-80.)

Defendant argues that its internal EEO office determined that all of these employees followed procedures with respect to change orders. (Def. MSJ at 9). However, there is ample evidence which raises a genuine issue of material fact with respect to the veracity of Defendant's assertion. Campbell testified that Plaintiff has advised him that Quinn had approved the change order but that he had not spoken with Quinn regarding Plaintiff's assertion even thought he had the opportunity to do so. (Campbell Dep. at 24, 26, 75.) Campbell further admitted that his "investigation" disclosed that other supervisors had agreed that Quinn could indeed have given Bahar verbal authorization to make the change order. (Campbell Dep. at 36.) Campbell further conceded that Plaintiff's immediate supervisors at the time the change order was made did not receive disciplinary action for the event. (Campbell Dep. at 58-59.)

Niehaus confirmed that it was quite possible Quinn had verbally approved the change

10

order.  (Niehaus Dep. at 53-55.)  Niehaus further testified that he had received a call from

MSD regarding the change order after his retirement.  (Niehaus Dep. at 47.)  Niehaus

checked his appointment book to see if he had a notation regarding a meeting with Quinn

regarding the change order.  (Niehaus Dep. at 47.)  Niehaus informed MSD that "whether of

not I have something written down or don't have written down, that doesn't necessarily

mean I was or wasn't there with a lot of meetings...I can't tell you whether I was there or

wasn't there.  Whether the meeting happened or didn't happen."  (Niehaus Dep. at 47-48.)

Campbell told a different story to Karney, however, in his memo regarding his investigation.

(Karney Dep. Ex. 1.)  "Mr. Niehaus, know (sic) for good notes, reviewed his notes but could

not find a reference to this project change in scope."  Id.  Plaintiff's appointment calendar,

on the other hand, does note a meeting with Quinn wherein the change order was discussed.

(Bahar Dep. at 74.)

Quinn confirmed that he had given verbal approval on many occasions to accept a

change order.  (Quinn Dep. at 24, 34-36.)  Finally, Huang testified that he had determined

that it was standard operating procedure for Quinn to give verbal authorization to change

orders, that he did not think the written warning was fair to Plaintiff, others had made

change orders with verbal approval, but Campbell and Karney nonetheless ordered that he

reprimand Plaintiff.  (Huang Dep. at 28-29, 44, 52-53, 59.)

Defendant's contention that all six of the Engineers in Training who held the position

for ten years or longer without acquiring their Professional Engineer's licence received a

change in classification and thus were not treated differently than Plaintiff is without merit

as only Plaintiff and Saeed, a Pakistan born employee, were transferred out of their

divisions.  (Bahar Dep. at 30-31, Johnson Dep., Ex. 4.)

Additionally, there is evidence that Plaintiff was denied at least two promotions in

favor of American born employees who were less qualified for the positions than Plaintiff. Plaintiff applied for the position of Facility Manager on or about April 30, 2001. (Plaintiff's Application, attached as Ex. D.) Rick Schmidt was awarded the position. (Bahar Dep. at 119-121.) Schmidt, an American born employee, did not posses a Professional Engineer's licence. (Donepudi Dep. at 42-43.) Schmidt did not have any project management experience, nor did he posses a engineering degree. (Bahar Dep. at 121-122.)

On or about December 18, 2000, Plaintiff applied for the position of Supervisor of Manhole Rehabilitation in Wastewater Collection. (Plaintiff's Application, attached as Ex. E.) Plaintiff was rejected in favor of Cindy Kron, and American born employee. (Bahar Dep. at 131.) Kron did not have a college degree, nor did she have any experience with manholes. (Bahar Dep. at 133.)

Plaintiff has thus provided ample evidence to raise a genuine issue of material fact with respect to whether he was treated less favorably than employees outside the protected class, rendering summary judgment inappropriate on this issue.

### 3.    Genuine Issues of Material Fact Exist With Respect to the Issue of Pretext.

Defendant rests its Motion for Summary Judgment on the argument that Plaintiff cannot establish a prima facie case of discrimination and fails to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Summary judgment must therefore be denied because the Defendant has failed to rebut the presumption of discrimination established by the prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792 at 802. Assuming *arguendo* that Defendant can articulate a legitimate, nondiscriminatory reason for the adverse employment action, Plaintiff can establish that the articulated reason is pretextual.

12

To establish that Defendant's explanation for the termination is unworthy of belief, Plaintiff may show that (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the adverse action, or (3) they were insufficient to motivate adverse action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of proof requires that Plaintiff show that the bases for the termination never happened or are factually false. Id. The second type of proof consists of a demonstration that "an illegal motivation was more likely than [the reasons] offered by the defendant." Id. The third type of proof consists of evidence that other American born employees otherwise similarly situated to Plaintiff were not treated differently. Id.

As established above, Plaintiff has established a genuine issue of material fact with respect to the issue of pretext in that the articulated reason for disciplining Plaintiff was insufficient to motivate the discipline because there is evidence Plaintiff followed MSD procedures and other employees had engaged in the same actions and were not disciplined. There is also evidence that Plaintiff and another foreign born employee were treated differently in that only they were moved out of their departments upon being reclassified to the CET-4 position. There is also evidence that Plaintiff was rejected for promotion in favor of less qualified individuals outside the protected class.

There is also a wealth of evidence that Defendant took unwarranted adverse employment action against other foreign born employees. Evidence that the Defendant engaged in a pattern of national origin discrimination if, of course, relevant to show Defendant's discriminatory intent. Reed v. County Miss, Inc., 1995 U.S. App. Lexis 14627, *11 (6th Cir. 1995) (attached as Plaintiff's Ex. 1.)

Donepudi, born in India, testified that he has been stripped of his duties with MSD. (Donepudi Dep. at 9.) Donepudi reports to Ed Kesterman, an American born employee,

13

who was Donepudi's former direct report. (Donepudi Dep. at 9, 28.) Donepudi testified that he believes he has been treated differently on account of his national origin as have others. (Donepudi Dep. at 23.)

Huang, Taiwan born, testified that when he was head of the Engineering Department, roughly 120 to 130 people reported to him. (Huang Dep. at 16.) Huang currently has only one direct report, and his duties are considerably less meaningful than previously. (Huang Dep. at 9, 22-24.) Huang also testified that he believes national origin is a factor in his and Plaintiff's treatment by MSD. (Huang Dep. at 30-31.)

George, born in India, testified that his supervisory responsibilities have been markedly reduced. (George Dep. at 13, 17.) George also testified that he believed national origin was a factor in the treatment of him and others by MSD. (George Dep. at 40.)

Finally, there is evidence that Campbell made negative comments regarding Plaintiff's national origin in August 1999. During a conversation Campbell had with Plaintiff, Campbell inquired about Plaintiff's national heritage; when Plaintiff informed him he was Iranian, Campbell replied that was "too bad" and mentioned that his daughter was dating an Iranian. (Bahar Dep. at 190-191.)

## C.    Plaintiff Has Established At Least A Genuine Issue Of Material Fact With Respect To His Retaliation Claims

Retaliating against an employee because he opposed unlawful discrimination is expressly prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a) and O.R.C. 4112.02(I). The elements of a claim for retaliation are: (1) that plaintiff engaged in protected activity; (2) that his exercise of his civil rights was known to the defendant; (3) that he was the subject of adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987). This burden

of proof presents a "low hurdle" to Plaintiff. Gribcheck v. Runyon, 245 F.3d 547, 551 (6th Cir. 2001) (retaliation claim under the Rehabilitation Act); EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997).

To establish the causal connection required in the fourth element, Plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had he not engaged in protected activity. Avery Dennison, 104 F.3d at 861; Jackson v. RKO Bottlers, 743 F.2d 370, 377 (6th Cir. 1984). Although no one factor is dispositive in establishing a causal connection, evidence that Defendant treated Plaintiff differently from similarly situated employees or that the adverse action was taken shortly after Plaintiff's exercise of protected rights is relevant to causation. Gribcheck, 245 F.3d at 551 (citing Wrenn, 808 F.2d at 501); Moon v. Transport Drivers, Inc., 836 F.2d 226, 230 (6th Cir. 1987).

Defendant may not rely on its articulated reason for the adverse action to argue Plaintiff has not met the causal connection element of the *prima facie* test. Gribcheck, 245 F.3d at 551.

If Plaintiff succeeds in establishing a *prima facie* case, Defendant must present some legitimate, nondiscriminatory reason for the adverse employment action. Wrenn, 808 F.2d at 501; St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Once Defendant meets this burden of production, Plaintiff must then show that Defendant's articulated reason for the adverse employment action is a pretext for discrimination. Id. at 507. In Hicks, the Court stated:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, [n]o additional proof of discrimination is required.

Id. at 511 (emphasis in original; footnote and citation omitted). Thus, the employee need not

produce *additional* evidence of discrimination.  As the Supreme Court clarified in <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 149 (2000), a plaintiff's *prima facie* case combined with sufficient evidence to find that the employer's asserted justification lacks credibility will permit the trier of fact to infer that the employer was motivated by unlawful discrimination.  In <u>Reeves</u>, the Supreme Court unanimously and authoritatively rejected the pretext-plus approach that several circuits had used previously in ruling on motions for summary judgment. <u>Id</u>. at 140-41. The Court held that the Fifth Circuit had "erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." <u>Id</u>. at 149.

### 1.    **Plaintiff Has Established A *Prima Facie* Case Of Retaliation**

Defendant concedes that Plaintiff has established that he engaged in protected activity and that Defendant knew about this exercise of protected rights (See Def. M.S.J. at 10).

Plaintiff first complained to the Defendant's internal EEO office following the written reprimand on July 10, 2000 and before his reclassification on August 18, 2000. (Bahar Dep. Ex. 12.)  Immediately thereafter, Plaintiff was reclassified to CET-4 and transferred out of his division.  (Johnson Dep. Exs. 2-3.)  On or about February 12, 2001, Plaintiff filed a charge of discrimination with the EEOC.  (Charge attached as Ex. A.) Immediately thereafter, Plaintiff was denied the Facilities Manager position.  (Bahar Dep. at 119-121.)  Plaintiff filed a second charge of discrimination on or about May 31, 2001. (Charge attached as Ex. B.)  Plaintiff filed a final charge on or about December 27, 2001, alleging that he had been discriminated against and retaliated against when denied the Facilities Manager position.  (Charge attached as Ex. C.)

The adverse employment actions endured by Plaintiff which were virtually

contemporaneous to his protected activity clearly creates a jury question as to the causal connection between Plaintiff's protected activities and the actions. Additionally, as demonstrated above, Plaintiff has established a genuine issue of material fact regarding pretext with respect to the transfer out of his department and the denial of promotions. Therefore, summary judgment is inappropriate on Plaintiff's claims of retaliation.

###     D.    Genuine Issues of Material Fact Exist As To Plaintiff's Public Policy Claim, Making Summary Judgment Improper.

The public policy of the State of Ohio provides an exception to the doctrine of employment at will. An employer cannot take adverse action against an employee for a reason that violates the articulated public policy of the State of Ohio. Painter v. Graley, 70 Ohio St. 3d 377 (1994). To establish a wrongful discharge in violation of public policy, Plaintiff must show that 1) a clear public policy exists; 2) The discipline imposed would jeopardize that public policy; 3) the discipline was motivated by conduct related to the public policy; and 4) Defendant lacked an overriding legitimate business justification for its action. Id.

Federal and state law clearly prohibit adverse employment action on the basis of an employee's national origin. Thus, Plaintiff has established the first two elements of the *prima facie* case.

The final two elements are essentially the same as the national origin discrimination claims under Title VII and O.R.C. §4112. Thus, the evidence presented above, supra at 6-14, applies here as well. Therefore, summary judgment should not be granted on this claim.

###     E.    Defendant Has Failed To Establish That It Is Entitled to Summary Judgment With Respect to Plaintiff's Promissory Estoppel Claim.

Defendant does not address Plaintiff's promissory estoppel claim in its Motion for Summary Judgment and thus does not establish that it is entitled to judgment as a matter of law on Plaintiff's promissory estoppel claim. Defendant merely asserts that assuming

17

summary judgment is granted on Plaintiff's federal claims, this Court has no jurisdiction to hear Plaintiff's state law claims. (Def. MSJ at 11.) As demonstrated above, Plaintiff has presented sufficient evidence to defeat Defendant's Motion for Summary Judgment. Thus, this Court has supplemental jurisdiction over his promissory estoppel claim and summary judgment must be denied.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that summary judgment be denied.

Respectfully submitted,


_____ /s/ Kelly Mulloy Myers _____
Randolph H. Freking (0009158)
Kelly Mulloy Myers (0065698)
Trial Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street, Fifth Floor
Cincinnati, OH  45202
(513) 721-1975


## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2003, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

_____ /s/ Kelly Mulloy Myers _____

18