IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ALI BAHAR,**                                         Case No. C-1-01-798

    **Plaintiff,**                                Judge Watson

    v.

                                                 **REPLY MEMORANDUM
IN SUPPORT OF
MOTION IN LIMINE**

**CITY OF CINCINNATI**

    **Defendant.**

Defendant, City of Cincinnati, submits the following memorandum as its Reply in support of its Motion in Limine.

Plaintiff alleges each of three witnesses have direct knowledge of Plaintiff's qualifications & performance and therefore such testimony is relevant under Rule 201.

**Rao Donnepudi**

Although for purposes of argument, the Defendant may acknowledge that Rao Donnepudi may have some knowledge of Plaintiff's work performance and qualifications, they are not relevant to the issues of alleged discrimination before the court. Defendant disputes the allegations that this witness has direct knowledge of the circumstances surrounding Plaintiff's transfer to the Wastewater Collections division of MSD. ( Plaintiff's memorandum at p. 3 )

The witness's deposition states the contrary:

    Q. How did you learn that Mr. Bahar was being transferred into WWC?
    A. Well. They didn't talk to me, okay?
…Q. Do you recall how you found out that Ali was..

1

    A. Everyone is talking, that's how I found out maybe. Everyone in our division maybe talking Ali moved from this division to other division; that's the only way I might have found out.

Further on when discussing his opinion that Mr. Bahar had been forced out he stated:

Q. And why do you believe Mr. Bahar was forced out?
A. I don't know. The only thing I know is he's honest guy; he's really honest guy.
Q. Why do you believe that Mr. Bahar did not want to move out of the division? I Mean, did he talk to you about it?
A. I think so, yeah.
What do you recall Mr. Bahar telling you exactly?
A. I don't remember exactly what he told me.
Q. And do you have an understanding as to what Mr. Bahar's job was in Wastewater Collections?
A. I don't know exactly. Probably Ali is probably not doing much there. He's in the department. I heard he reports to CT1 or CT2, he used to report to some technician.(Donepudi Depo. pp. 26-28).

When asked about his knowledge of Plaintiff's reprimand he admitted Mr. Huang told him and that he was not told why Mr. Bahar was reprimanded (Donepudi Depo at p. 30).

As to any positions within MSD that Plaintiff may have expressed interest, he stated he did not remember that.(Donepudi depo at p. 30).

Lastly, and what demonstrates the witness's view and opinion toward MSD can be found in his deposition when asked if during his employment with the City, had he heard anyone make any disparaging comments about Mr. Bahar. He replied:

"I don't recall. Probably, but they won't say anything in front of me."(Donepudi depo. at p. 32).

This witness has no direct evidence of the allegations made by the Plaintiff and to allow him to discuss his beliefs of national origin discrimination either as to himself; Plaintiff or others would result in unjust prejudice clearly outweighing any relevant probative value.

**Tony Huang**

The Defendant acknowledges that this witness was involved in the investigation of the Plaintiff and as head of the division was instructed to convey a written reprimand for violation of policy. However, any testimony regarding Mr. Huang's career path and his perception of discrimination as to himself or others results in an unjust prejudice to the Defendant far outweighing any relevant probative value.

As to any direct knowledge of Plaintiff's transfer, this witness has stated in his deposition he had no knowledge. Specifically when asked:

Q. Were you ever told by anyone in management why Ali was moved from Engineering to Wastewater Collection? I mean, were you told that it was—
A. I don't get involved in that area at all. (Deposition Huang at p. 45).

Mr. Huang, a chief sewers engineer, was not in Wastewater Collections Division of MSD nor was he reprimanded or denied a position for which he applied as alleged by the Plaintiff.

The sole purpose beyond any potential relevant testimony as to the investigation of Plaintiff and his reprimand would be to unjustly prejudice the Defendant with this witness' perception of discrimination and his own career path. As such, it should not be permitted.

The issue of a written reprimand is not relevant in any event since it resulted in no loss of pay or status to the Plaintiff arising to the level of any recognized adverse employment action. Any relevance is minimal at best. Even if this Court would allow testimony as to the investigation and reprimand, the witness' own perceptions of discrimination as to himself or others within the City or MSD should be excluded for the reasons stated above as causing an unjust prejudice outweighing any relevant value.

**Sam George**

This last witness is Plaintiff's present direct supervisor, after Plaintiff received his Professional license and transferred to Stormwater Management (SMU), in 2002. George is also being presented to discuss his own complaints of alleged discrimination

. Mr. George is superintendent of Wastewater Management, an entirely separate division within MSD, his own pending case is awaiting disposition. The main alleged act of discrimination raised by Mr. George is a denial of a 3% cost of living adjustment for failure to meet certain requirements and goals as SMU's superintendent. Again, there is no allegation of transfer, failure to obtain a position within the City or being reprimanded.

The case of *Schrand v. Federal Pacific Electric Company, et al,* 851 F. 2d 152 (6th Cir. 1988) discusses the prohibition of "me too" evidence because of being highly prejudicial but only slightly relevant. In that particular case, the testimony of two former employees of the Defendant, which was that they were terminated because they were too old, was excluded. In addition to not being relevant due to the fact that different decision makers were involved and that they worked in places far from Plaintiff's employment, the court held that:

> We also conclude that the evidence should have been excluded under Rule 403. With no other direct evidence of age discrimination in the case, the impact of two former employees' testimony would be great. Thus, even if the evidence were relevant, we believe its probative value was substantially outweighed by the danger of unfair prejudice flowing from its admission. Although it has no direct bearing on the issue to be decided-whether Schrand was discharged because of his age- this testimony embellished the circumstantial evidence directed to that issue by adding "smoking gun" type evidence. It offered an emotional element that was otherwise lacking as a basis for a verdict in Schrand's favor. See Notes of Advisory Committee to Rule 403.
> In addition to creating prejudice that substantially outweighed its probative value, the testimony tended to confused the issue by focusing the jury's attention on two totally unrelated events, a consideration under Rule 403. If the jury was convince that the testimony of Owens and Dolan were truthful, there was

a distinct danger that the jury would assume a connection that was never proven between the terminations of the two witnesses and that of *Schrand. id* at p. 156).

In the present case, the allegations and perceptions of these witnesses are unrelated to the action alleged to have been discriminatory by this Plaintiff. Their testimony, if allowed, would require the Defendant to conduct a series of mini-trials as to each allegation. In some instances, additional witnesses would be required to testify to address these alleged allegations.

The two unpublished cases cited by Plaintiff are distinguishable. Both of these cases directly involve an attempt to establish a pattern and practice case. This case is one of alleged disparate treatment. The Plaintiff, other than a statement made in a conclusory manner in his complaint that Defendant has engaged in a pattern and practice of discrimination, has not brought such a claim. In response to Defendant's Motion for Summary Judgment and in Judge Dlott's Order denying the same, there is neither such claim raised nor the objections to the application of a McDonnell Douglas standard.

In addition, the testimony in both cases involved Age discrimination and in one the Defendant Company's practices implemented during restructuring as to have an adverse impact on employees over forty years of age. In the other case the court also noted that the testimony was closely related to the plaintiff's discrimination allegations.

In the present case, the nature of the alleged discrimination involves other alleged acts perceived to be discriminatory that are not totally identical with those claimed by Mr. Bahar.

It is therefore respectfully requested that the Court issue an order prohibiting the testimony or related use of exhibits as to these witnesses own perception of discrimination against others or themselves within either the City or MSD.

5

Respectfully Submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ AUGUSTINE GIGLIO (0031911)
AUGUSTINE GIGLIO (0031911)
TERRANCE A. NESTOR (0065840)
Sr. Assistant City Solicitors
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334
Fax: (513) 352-1515
Email: gus.giglio@cincinnati-oh.gov
Trial Attorneys for the Defendant


**CERTIFICATE OF SERVICE**

I hereby certify on December 30, 2004 a true and accurate copy of the foregoing Reply Memorandum in support of Defendant's Motion in Limine was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

\s\ AUGUSTINE GIGLIO
AUGUSTINE GIGLIO (0031911)
Sr. Assistant City Solicitor

s:\giglio/revised \Replybahar\limine