**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ALI BAHAR** | : | Case No.: C-1-01-798 |
| PLAINTIFF | : | (Judge Watson) |
| v. | | DEFENDANT CITY OF CINCINNATI'S MOTION |
| **CITY OF CINCINNATI** | | FOR JUDGMENT AS A MATTER OF LAW UNDER FED R CIV P 50(b) |
| DEFENDANT | | |

Defendant, through its counsel, having at the close of all the evidence moved this court for judgment as a matter of law, which motion was denied, and thereafter a verdict having been returned by the Jury in favor of Plaintiff, Defendant now renews its motion for judgment as a matter of law in accordance with Rule 50(b) of the Federal Rules of Civil Procedure. This motion is made on the following grounds:

(1) Plaintiff has failed to prove a prime facie case of retaliation, in that Plaintiff failed to present *any* evidence that the decision makers for the Defendant had knowledge of Plaintiff's protective activity for any alleged adverse actions taken;

(2) that the alleged employment actions were not adverse;

(3) there was no evidence of a causal connection between the alleged adverse acts and Plaintiff's protected activity;

(4) the jury instructions were plain error in that they failed to provide any instruction as to the necessary requirement of Plaintiff to bear the burden of proof to overcome any legitimate reasoning for Defendant's actions alleged to have been retaliatory and as to the to instructions allowing the jury to impute the knowledge of an agent or

manager of a governmental body to the City for purposes of Plaintiff meeting the knowledge prong;

(5) plaintiff failed to meet his burden to present evidence that Defendant's legitimate non-discriminatory reasons for its actions were a pretext.

Respectfully Submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ Augustine Giglio
AUGUSTINE GIGLIO (0031911)
TERRANCE A. NESTOR (0065840)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334
Fax: (513) 352-1515
Email: gus.giglio@cincinnati-oh.gov
Trial Attorneys for the Defendant

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**

**Procedural History**

This case came to trial on January 18, 2005 on Plaintiff's consolidated complaints with claims alleging discrimination based upon National Origin and Retaliation, both under Title VII of the Civil Rights Act of 1964, as amended. A verdict was returned in favor of the Defendant on the claim of discrimination based upon National Origin and in favor of the Plaintiff on the claim of Retaliation.

The Defendant timely moved for judgment both at the end of Plaintiff's case as well as at the end of the proceedings. The court having denied its motions, the Defendant now seeks judgment as a matter of law under Fed. R. 50 (b).

**Statement of Facts**

Plaintiff Ali Bahar has been employed with the Defendant, the City of Cincinnati, through the Metropolitan Sewer District since 1988. (Pl.'s Compl. 1, ¶8; Deposition of Ali Bahar, p. 9, ¶¶3-4, hereafter "Bahar Depo.") He was originally hired as an Engineer-In-Training or "EIT." (Deposition of Julia Johnson, Exhibit 1, hereafter "Johnson Depo.")

State law and Civil Service regulations require that an EIT obtain a professional engineer's license within ten years, otherwise the EIT must be moved to a different position with the title of Civil Engineering Technician, Senior Technician or Senior Engineering Technician. (Johnson Depo., pp. 29-30.) Because Plaintiff and several other similarly situated MSD employees did not obtain their licenses within ten years, they were laterally moved into the classification of a senior civil engineer technician (CET-4), but retained the same pay as before their change in classification.

On July 10, 2000, Plaintiff received a written reprimand for violating administrative procedures by failing to obtain approval of an increase in a Capital Improvement Contract for additional work in excess of $200,000. Plaintiff did not lose any pay or benefits as a result of this reprimand.

Plaintiff alleged he was discriminated against because: (1) no discipline was administered to American-born employees who were given verbal approval of project orders, (2) his job responsibilities were taken away from him and he was treated differently than similarly-situated, less qualified American-born individuals; (3) an American-born employee with less education and qualifications was hired to perform Plaintiff's previous job duties; and (4) he was isolated at the workplace, often given nothing to do. (Pl.'s Compl. 1, ¶¶17, 22-23, 25.)

Also, Plaintiff asserted that the City's failure to place him in the position of Facilities Manager and to promote him to CET-5 level constitutes national origin discrimination. (Pl.'s Compl. 2, ¶15; Bahar Depo., p. 43, ¶¶4-6.) Plaintiff sought the position of Facility Manager. The Department of Facility Management is an entirely different department operated by the City of Cincinnati with no direct connection with the operations of MSD. Specifically, Plaintiff alleged that the City engaged in a pattern and practice of national origin discrimination and retaliation. (Pl.'s Compl. 1, ¶26).

During his employment, the Plaintiff has received consistent raises and never had a decrease in pay. (Bahar Depo., p. 119, ¶¶6-8 and p. 203, ¶¶6-12.) Plaintiff received his only written reprimand from his then supervisor, Tony Huang on July 10, 2000. The reprimand was due to his failure to follow MSD/City policies and procedures regarding obtaining a supervisor's authorization for a purchase change order to a work contract.

(Karney Depo., p. 61, ¶¶1-7, Exhibit 1; Deposition of Robert Campbell, p. 12, hereafter "Campbell Depo.")  The City requires engineers to obtain supervisor approval prior to expending additional monies, especially since projects cannot exceed their appropriated amounts.  (Deposition of Thomas Quinn, p. 37, ¶¶3-9 and p. 43, hereafter "Quinn Depo.")  Violations of such procedures justify employee discipline.  (Quinn Depo., p. 43, ¶¶12-24.)

The jury rejected all of Plaintiff's claims of National Origin discrimination. The only claim resulting in a verdict was the remaining Retaliation claim.

On July 27, 2000, Plaintiff filed an internal EEO complaint with the EEO Department of the City of Cincinnati. In his complaint, Plaintiff alleged that he was discriminated against based upon race and national origin. (Trial EXH-DX2092). The charge, together with a request by the EEO office for a response by the Metropolitan Sewer District, was sent to the Director, Patrick Karney of MSD on August 22, 2000. (Trial Exh-2063). Mr. Karney testified at trial that he had no prior knowledge of the complaint and that the same was first sent to him on or after August 22, 2000. Mr. Robert Campbell similarly testified that he had no knowledge of the charge filed with the internal EEO department of the City until some time after August 22, 2000. Plaintiff failed to produce even a scintilla of evidence that MSD decision makers had any knowledge of his complaint before August 22, 2000.

Plaintiff subsequently filed three separate EEOC charges with the Federal EEOC Office. The first charge was filed on February 9, 2001 alleging discrimination and retaliation based upon the circumstances giving rise to Plaintiff's reprimand, his removal of Project Manager duties, and his transfer. (Trial Exh PX10). The second filing was dated May 31, 2001alleging discrimination based upon national origin and retaliation, alleging

5

that all of his job responsibilities were removed and that he was essentially doing nothing. In addition, Plaintiff complained of being assigned to report to a non-engineer and that a Caucasian was hired to take over some of his projects at a salary of $20,000 more than he was being paid. Lastly, on December 3, 2001, a final charge was filed with the EEOC alleging discrimination and retaliation based upon Plaintiff not being hired as Facility Manager in the General Services Department for the City of Cincinnati.

**Legal Argument**

A motion for judgment as a matter of law must be granted where (1) there is a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the moving party that reasonable minds could not arrive at a verdict against it.[1]

**(1)   Plaintiff Failed To Present *Any E*vidence That Was Submitted To Meet The Requirement That The Decision Makers For MSD Had Knowledge Of Plaintiff's Claim Of Protected Activity.**

The 6th Circuit has set for the necessary elements to sustain a prima facie of Title VII retaliations as follows:

> 1) the plaintiff engaged in activity protected by Title VII; 2) the plaintiff exercise of his civil rights was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action" claim of retaliation.[2]

The Plaintiff failed to produce any probative evidence to prove the necessary elements of a prima facie case of retaliation. No evidence was presented that the transfer,

---

[1] *Hernandez v. Keane,* C.A. 2 (N.Y.) 2003, 341 F. 3d 137.

[2] *Mulhall v. Ashcroft*, 287 F. 3d 543(2002)

reclassification or any other alleged adverse action would not have occurred but for the seeking of a protected activity. Each of the necessary elements to substantiate a claim of retaliation separately are discussed below.

**Plaintiff sought internal EEO assistance on July 27, 2000.**

Defendant does not dispute that Plaintiff sought Internal EEO assistance on July 27, 2000. However, uncontested evidence established that the decision makers of MSD had no knowledge of the protected activity claimed until at least August 22, 2000. Knowledge on behalf of the decision makers is required to meet the necessary element for retaliation.[3] All evidence presented at trial was that the decision makers for MSD did not receive notice of Plaintiff's filing until August 22, 2000.

Plaintiff 's filing of his internal complaint with the City's EEO Office was on July 27, 2000. This was after the issuance of any reprimand. Although it has been argued that the reprimand was not an adverse employment action, even assuming arguendo that it was, it occurred prior to any protected activity being pursued.

**Reclassification.**

As to re-classification to an Engineering Technician for failure to achieve a professional license within ten years, testimony was presented that the decision to move Plaintiff and other EITs was made prior to the July 27, 2000 filing as well. (Testimony J. Johnson at p.57). In addition, unrefutted evidence at trial supported the fact that the Civil Service Commission (CSC) was asked to formally approve such re-classification on August 18, 2000.(Trial ExhPX7/DX2002). Again, this action was taken prior to August

---

[3] *Mulhall v.* Ashcroft, 287 F. 3d 543(6th Cir. 2002), id
*Joiner v. Ohio Dept. of Transportation*, 949 F. Supp. 562 (S.D. Ohio, Western Division, 1996); (attached).
*Hollowell v. Michigan Consolidated Gas Company,* 18 Fed. Appx. 332, 20001 WL 1006277 (6th Cir. Mich. 2001) (attached).

22, 2000, the date when first knowledge of the protective activity was attributed to the decision makers. (TrialExh DX2015).

Plaintiff acknowledged he did not avail himself of further appeals from the CSC and the decision became final. The next alleged adverse action was the transfer to Wastewater Collections division. Even assuming arguendo, that such a transfer was adverse, again the transfer was **prior** to knowledge of the decision makers as required. Plaintiff testified and trial exhibits confirm that he was told on August 18, 2000 that he was being reassigned to Wastewater Collections. All the evidence at trial confirmed that the alleged adverse actions occurred prior to August 22, the date on which the decision makers had knowledge of the alleged protected activity. Therefore, Plaintiff provided no evidence at trial to support a jury's verdict for retaliation.

In considering Defendant's motion for judgment after the conclusion of Plaintiff's case, the court made reference to the testimony of Julia Johnson and whether such testimony could allow the jury to iifers knowledge of the decision makers, either Mr. Karney or Mr. Campbell. A review of the transcript filed with the court confirms that nothing in Ms. Johnson's testimony can support such an argument.

In reply to the workings ofCity's EEO Office, Ms. Johnson testified as follows:

Q. When you issued the memo regarding the reclassification were you personally aware that Mr. Bahar had filed an internal EEO complaint with the City of Cincinnati's EEO?

A. No.

Do you know when you first became aware that there may have been a—an internal complaint to the City's EEO?

A. I think there was probably like an FYI that something had happened later but not initially.

Q. Was that after the reclassification memo that you became aware that there was an internal EEO Complaint.

A. I cannot recall. (T. p.64.)

When asked about the functions of the City's EEO and an internal EEO person in MSD Ms. Johnson stated:

A. Okay. Within MSD, as I said yesterday, Mr. Wendell Young is the only person. There is no staff who an employee of MSD if they have an issue or concern about discrimination or they feel that they are—there is disparate treatment, any violation of Title VII, they can contact Mr. Young and he will do an internal investigation.
If they're not satisfied, they still can go outside and avail themselves to the City resources. The City's EEO department reports directly to the City manager and, again, investigates issues of Title VII, does have a staff, is accountable to the city manager and the city council around hiring practices, and also to let them know about discrimination cases and the resolutions of those.

Q. Now, in your department if there is—as to any employee who comes to Mr. Young or whoever the EEO officer is, do you necessarily automatically know that there's been a – an issue raised by an employee?

A. No. The nature of my section is its confidential. And it's really so that the employee can feel that they can at least have a resource and it's not spread or talked.(T. p. 65).

After discussing that the physical location of the City's EEO office is located away from MSD, Ms. Johnson addressed the manner in which a complaint is brought to the attention of the department.

Q. All right. And do you know typically how it happens that the department is notified that there is an internal; EEO complaint?

A. The contact usually is from the EEO office to the director of the departments.

Q. And then how do you become aware?

A. Only would be in a report setting. Once the investigation has been done and a report is sent from downtown, that information, that report may come to us for records.

9

> Q. So it is fair to say there's typically a period of time between the City's internal EEO investigation and when the department is notified?
>
> A. Yes.
>
> Q. And you don't know specifically when your department was notified of the internal complaint?
>
> A. No, I can't recall.
>
> Q. And that information would typically go to the director?
>
> A. Yes. (T. p.66-67).

This evidence confirms the testimony of all the other witnesses as to whether the decision makers had any knowledge of the internal EEO complaint before the EEO office sent such notification in a memo under date of August 22, 2000. The Plaintiff not having provided any evidence of knowledge of the internal filing before August 22, 2000, the jury could only be left to speculate as to whether knowledge had been achieved.

> The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the Plaintiff" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F. 2d 859, 863 (6th Cir. 1986).[4]

The next EEOC complaint was brought in February of 2001. As stated above, this complaint referenced the reprimand and transfer to Wastewater Collections although filed well after those alleged adverse actions. In fact, Plaintiff testified he continued to receive appropriate raises with no loss of pay. No adverse action occurred even after this protective activity was pursued.

---

[4] *Mulhall v. Ashcroft, id.* at p. 551.

The only action that possibly could be interpreted as an adverse was Plaintiff's failure to be promoted to the position of Manhole Supervisor sometime in 2001. Since Plaintiff acknowledged at trial that he had voluntarily removed himself from consideration for that position, there can be no adverse action attributed to the City thereby. All testimony, including Plaintiff's own, confirmed that he withdrew from the selection process.

### Hiring of PE Engineer In May 2001.

Plaintiff's next allegation of protected activity occurred on May 31, 2001, when the Plaintiff again filed a charge with the EEOC. Plaintiff alleged that another individual less qualified than himself was hired as a Professional Engineer in Wastewater Engineering at a higher compensation level than himself. Plaintiff testified that the individual was hired into a position that required a professional Engineering License and that he did not possess the required license qualifications for that position. No adverse action could possibly have occurred by not hiring Plaintiff for a position he acknowledged he was not qualified for at the time.

Plaintiff, after repeated tries, finally obtained such a license in early 2002 and was promoted without loss of any pay to the position of Senior Engineer and was assigned to the Storm Water Management Division, all of which Plaintiff testified to at trial. Again, there was no evidence of any retaliatory or adverse action after the filing of this charge.

### Facility Manager Position.

The next and last charge alleged that the Defendant had discriminated and retaliated against Plaintiff for failure to hire him as a Facility Manager in the Department of Facilities Management earlier that year and after filing his February EEOC charge. This charge was not brought until December 2001. All the evidence confirmed that the Department of

11

Facility Management was a separate department from MSD and furthermore, the decision maker in that department had no contact with nor discussed Plaintiff's claims with anyone from MSD. Plaintiff failed to produce *ANY* evidence that the decision maker for hiring in Facility Management had knowledge of any of Plaintiff's claims. In addition, all evidence proved that there was no communication between MSD and the Facilities Management Department interviewing for the Facility Manager's position.

Therefore as a matter of law, Plaintiffs' claims must be denied as to retaliation.

**The Alleged Employment Actions Were Not "Adverse."**

In addition to lack of knowledge by the decision makers, Plaintiff also failed to submit evidence that the alleged retaliatory actions amounted to an adverse action as defined by law. There being no actions that could even remotely be considered as adverse, Plaintiff has failed to demonstrate the necessary elements of a prima facie case.

The 6th Circuit has set forth the requirements for establishing a materially adverse employment action as being:

> [M]ore disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.[5]

The 6th Circuit has consistently held that *de minimus* employment actions are not materially adverse, and thus, not actionable. *See, e.g., Id.* at 662 (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); *Jacklyn v. Schering Plough Healthcare Prod.* (6th Cir. 1999), 176 F.3d 921, 930 (holding that "neither

---

[5] In *Hollins v. Atlantic Co,* (6th Cir. 1999), 188 F.3d 652, at 662.

requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved were materially adverse employment actions"); *Jackson v. City of Columbus* (6th Cir. 1999), 194 F.3d 737 (holding that police chief's suspension with pay was not an adverse employment action); and *Kocsis v. Multi-Care Management* (6th Cir. 1996), 97 F.3d 876, 885 (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

Applying these previous Sixth Circuit holdings to the Plaintiff's claims clearly demonstrates that he cannot establish a materially adverse employment action. The Plaintiff's situation is similar to *Kocsis, supra,* in that he was reassigned a new position pursuant to Ohio law (due to the his failure to obtain a professional engineer license within ten years) that provided similar pay and benefits. He is still currently employed with MSD. There was no demotion or diminution in Plaintiff's wages, benefits or in job title. The very fact that he was re-classified dictated that his responsibilities would change. Plaintiff now attempts to argue that his classification as a CET-4 was a material change and an example of an adverse action. This is at best, a circular argument, since the re-classification rather than the assignment to a different location, required a change in duties. The issue would then go back to whether the classification change itself was adverse. As argued above, evidence presented at trial that the inquiry regarding re-classification of several EITs to CET-4s was made several months prior to formally addressing the Civil Service Commission in August of 2000. (Johnson Testimony p. 57). This was in addition to the fact that no knowledge of the protected activity was known at the time a formal request to the Civil Service Commission was made on August 18, 2000. As a result, Plaintiff's claim fails.

13

Lastly, Plaintiff was the only one out of the six reclassified EITs to appeal the decision to reclassify to the City of Cincinnati's Civil Service Commission. As testified to at trial, Plaintiff's appeal was denied, although the Commission did order that Plaintiff be promoted to Senior Engineer upon obtaining his Professional Licensure, which occurred in March of 2002.

Plaintiff is now barred from claiming the re-classification constituted an "adverse" employment action since the issue was heard in a quasi-judicial hearing before the CSC who determined that the re-classification was proper. The fairness and legitimacy of the reclassification was therefore already determined. The very fact that the Civil Service Commission did not find any basis to Plaintiff's appeal and his failure to appeal the decision further, demonstrates that the decision was reasonable and well within the rights of the department.

Plaintiff did not file any grievance or any further appeals to the Civil Service Commission regarding his transfer to the division of Wasterwater Collections

Plaintiff's perception of his duties and whether they are less than favorable is insufficient to establish an adverse action. ' A mere inconvenience or an alteration of job' responsibilities or a 'bruised ego' is not enough to constitute an adverse employment action for Title VII purposes.[6]

**1) The Re-Classification To A CET-4.**

Evidence was uncontridicted that the re-classification of EITs (Engineers in Training) was made not only as to the Plaintiff but at least five additional EITs who had not received their PE within ten years. No evidence was presented to support that such a re-

---

[6] *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F. 3d 789 (6th Cir. 2004), at 797 citing *of Kocsis v.v. Multi-Care Management Inc., cited supra.*

classification was in retaliation for bringing a complaint no decision maker knew about; Plaintiff suffered no adverse effect in pay or benefits. As argued above, the Civil Service Commission heard Plaintiff's lone appeal and denied the same.

### 2) The Transfer To WWC.

Re-assignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F. 3d 876, 885 (6th Cir. 1996). All the testimony presented at trial confirmed that Plaintiff was to work within his classification and could work below it, but in no event, above. Plaintiff, as well as all other EITs, now CET4's, were re-assigned and required to work within the CET classification. As employees with new classifications, their assignments would understandably change to comply with the requirement to work within the new classification. As testified to at trial, transfers between different divisions of MSD occur. In fact, Plaintiff was moved with an entire group of employees in project management from Wastewater Treatment to Wastewater Engineering in 1992.

Mr. Tony Huang, an adverse witness to the Defendant, acknowledged that when he received the memo to work his employees within their classification he treated them all the same. The duties of all employees previously classified as EITs changed, not just those of the Plaintiff. The allegation of taking away his job responsibilities is without any factual basis.

When Plaintiff was assigned to Wastewater Collections, Ralph Johnstone, Jerry Wiemer and Steven Minges testified Plaintiff was assigned commensurate work. Plaintiff produced no evidence that his work activities were not in conformance with the mandate of classification duties. No evidence was presented, that in addition to CET-4 duties, it is both

15

permissible and customary to perform duties below CET-4 as long as work above that classification was avoided. Plaintiff may have wished to continue "Project Manager" work while classified as an EIT, but his new duties, as those of other EITs, no longer permitted that. Plaintiff's allegation that he was the only newly made CET-4 to move to another division, in and of itself, fails to create such a change that could conceivably be considered adverse.[7] The allegations that the conditions of his work location being adverse, as opposed to others, were unsupported. Plaintiff began his new assignment sharing office space with his supervisor, Ralph Johnstone. His office was located on the main floor about 50 feet from that of the superintendent. This was in contrast to the office of another EIT re-classified to CET-4, Rick St. John, who was placed in the basement of the building next to the garage, with no windows, in a less desirable location. Rick St. John is Caucasian. No testimony was offered by the Plaintiff to refute this evidence.

### 3) The Hiring Of A Qualified Individual In May Of 2001(Wm. Lutz)

Plaintiff acknowledged that the position for which Mr. Lutz was hired required a professional engineer's license which plaintiff did not possess in May of 2001.Therefore, such action was not an adverse employment act. When Plaintiff finally achieved his PE, he was in fact promoted with commensurate pay increases as similarly situated employees of MSD. No evidence was presented to the contrary.

### 4) The failure to be promoted to Manhole Supervisor.

As stated above, Plaintiff admitted that he removed himself from consideration by not participating in the hiring process. It is impossible to have an adverse employment action when the Plaintiff himself failed to complete the required application process.

### Plain Error In Jury Instructions

---

[7] *See Kocsis,,_cited supra*

### a) Absence of Pretext instruction under Retaliation Claim.

The court addressed the burden of proof in Plaintiff's first count of National Origin Discrimination and the shifting of burden after a prima facie case was presented. This included the elements of proving whether the Defendant's legitimate reasoning was a pretext, and the subsequent burden remaining with the Plaintiff that such reasons were only a pretext.

However, when instructing the jury as to the second count pertaining to Plaintiff's claim of retaliation, the instructions were silent as to the shifting burden of proof if Plaintiff managed to establish a prima facie case. As in the case of National Origin discrimination, in a retaliation claim, the Plaintiff maintains the continued burden to prove that any legitimate reason for alleged retaliatory adverse action was in fact a pretext. The Jury was provided no such instructions. The omissions of such a critical element in the burden of prove requirement was plain error.

Assuming *arguendo*, that Plaintiff established a prime facie case of retaliation, all of which Defendant specifically denies, if the Defendant City articulated a legitimate, non-discriminatory reason for its actions, the burden remains with the Plaintiff. Just as in the denied discrimination claim, Plaintiff has the burden to show the reasons given were a pretext.

The Plaintiff may show the reasons of defendant are pretextual, and the real motivating reason is retaliation by showing the proffered reasons: (1) have no basis in fact; (2) did not actually motivate the Defendant's challenged conduct, or (3) were insufficient to warrant the challenged conduct.[8] In order to show that the reasons given by the City did not

---

[8] Wexler v. White's Fine Furniture, 317 F. 3d 564, 576 (6th Cir. 2003).

motivate the alleged adverse action, Plaintiff must introduce additional evidence of retaliation.[9]

The facts revealed at trial demonstrated that the Defendant had legitimate non-discriminatory reasons for re-classifying Plaintiff; for transferring him; for hiring a PE in 2001; and for not promoting him to the position of Manhole Supervisor. Plaintiff failed to present additional evidence beyond what is necessary to show a prima facie case, Plaintiff failed to prove that the reasons given were a pretext.

The reclassification issue was addressed both in the fact that several EITs were so re-classified after ten years without obtaining a Professional Engineer's license. Defendant presented reasons that the re-classification occurred based upon Civil Service regulations. Specifically,the Classification Specifications for EIT was submitted at trial setting forth the requirement that "…after ten years in the EIT classification without passing the Professional Engineer registration, the incumbent will be reclassified to an equivalently compensated technical or administrative classification ." (Trial Exh DX2003).

Reassignments were contemplated. (Trial Exh PX7). In addition, there was testimony of the superintendent of Waste Water Collections, Mr. Minges, where he stated that he wanted Plaintiff to fill a newly created CET-4 position in his department for a recently approved lining project.

The nature of work was described by Plaintiff's supervisors and the fact that as a CET-4, he was not to perform higher classification duties as set forth by the rules and regulations of the CSC. Repeated memos to MSD supervisors long before any protected activity was sought also directed supervisors not to work their employees above their classifications.(Trial Exh DX 2023 & DX2022).

---

[9] Manzar v. Diamand Shamrock Chems. Co., 29 F. 3d 1078, 1084 ( 6th Cir. 1994).

The Plaintiff was not considered for the Manhole Supervisory position due to his admitted self-imposed lack of participation in the application process. Lastly, the hiring of a qualified Professional Engineer, months before Plaintiff was even licensed was explained even by Plaintiff's testimony that a PE was required for the position and Plaintiff did not have such a license at the time.

All of the legitimate reasons provided for the Defendant's actions went uncontested by the Plaintiff. Not having a clear instruction as to the requirement of Plaintiff to meet his burden as to pretext was plain error.

  b)  **Plain error in instruction relating to causal connection.**

The court's instructions failed to state correctly the limitation on inference by close proximity in time. While close proximity in time creates an inference of a causal connection between two events, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.[10]   The Jury instructions as given, allowed the jury to misconstrue the proper standard and allowed them to interpret the instruction to allow proof of a causal connection to be made solely by time proximity. (P.11 of Jury Instructions). This absence of the full definition created plain error.

  c)  **Plain error in instruction regarding knowledge of decision makers**

It was plain error to incorrectly instruct the jury such as to allow them to impute the knowledge of an agent or manager of a governmental body to the City. Specifically, at p. 7 of the instructions, the jury was instructed that the knowledge of an agent gives knowledge to the corporation. Here, however, the necessary knowledge element for a retaliation claim must be that of the decision makers not just any agent of the City.[11] It was therefore plain

---

[10] *Nguyen v. City of Cleveland*, 229 F. 3d 559 (6th Cir. 2000).
[11] *Mulhall, supra.*

19

error to so instruct the jury to allow an inference of corporate knowledge in a retaliation claim. Such error in the instruction allowed the jury to be misinformed as to whether the requisite knowledge of the protected activity did in fact exist. (p. 6 of Jury Instructions).

For all of the above reasons, Defendant respectfully requests that judgment be entered as a matter of law for the Defendant.

Respectfully Submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ Augustine Giglio
AUGUSTINE GIGLIO (0031911)
TERRANCE A. NESTOR (0065840)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334
Fax: (513) 352-1515
Email: gus.giglio@cincinnati-oh.gov
Trial Attorneys for the Defendant


**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2005 a true and accurate copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

\s\ AUGUSTINE GIGLIO
AUGUSTINE GIGLIO (0031911)
Sr. Assistant City Solicitor