IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ali Bahar,

      Plaintiff,

v.

City of Cincinnati,

      Defendant.

Case No. 1:01cv798

District Judge Michael H. Watson

## ORDER

Before the Court is the February 7, 2005 Motion of Plaintiff Ali Bahar (hereinafter "Plaintiff") for Equitable Relief. (Doc. 77) Defendant City of Cincinnati (hereinafter "Defendant") filed a Memorandum in Opposition on February 11, 2005. (Doc. 82)

Plaintiff seeks an order from the Court granting him equitable relief. Specifically, Plaintiff requests the Court order Defendant transfer him to the Waste Water Engineering Division (hereinafter "WWED") of the Metropolitan Sewer District (hereinafter "MSD") as a Supervising Engineer and order a raise in his compensation to the amount of $70,000 per annum.

### I.  PROCEDURAL BACKGROUND

On November 20, 2001, Plaintiff filed a Complaint[1], against Defendant alleging, Defendant, his employer, unlawfully discriminated against him based on his national origin and retaliated against him in violation of Title VII during the course and scope of his employment. On September 27, 2002, Plaintiff filed a second Complaint[2] which

---

[1] Case Number 1:01cv798

[2] Case Number 1:02cv697

alleged Defendant continued to retaliate against Plaintiff in violation of Title VII.

The Court consolidated these matters and proceeded to trial before a jury on January 19, 2005. On January 26, 2005, the jury returned a unanimous verdict that Plaintiff proved by a preponderance of the evidence Defendant retaliated against Plaintiff for complaining of discrimination. The jury awarded Plaintiff compensation in the amount of $200,000. However, the jury also determined Plaintiff failed to prove by a preponderance of the evidence Defendant discriminated against him based on national origin.

## II.  ARGUMENTS OF THE PARTIES

As stated above, Plaintiff prevailed upon his Title VII retaliation claim. Plaintiff contends the effect of Defendant's retaliation has been the derailment of his career with MSD. Moreover, Plaintiff asserts he suffered the effects of the retaliation for over four years following his initial removal from WWED. As such, to grant Plaintiff the most complete relief possible, Plaintiff maintains the Court must make him whole by placing him in as near a position as he would have occupied had the unlawful activity not occurred. To achieve this, Plaintiff contends the Court must order him transferred back to WWED and promote him to Supervising Engineer, the next level engineering position. In addition, Plaintiff contends the Court must order his compensation adjusted to a rate of $70,000 per annum.

Plaintiff relies upon evidence introduced at trial pertaining to William Lutz to support his request for equitable relief. Mr. Lutz, an external candidate, was hired into WWED as a Senior Engineer following Plaintiff's transfer and was compensated at the rate of approximately $70,000 per annum. Further, evidence established that the next

step in the career path for an engineer following Senior Engineer is Supervising Engineer.

Further, Plaintiff relies upon *James v. Norton*, 176 F.Supp.2d 385 (U.S.D.C. Penn. 2001) and *Bass v. Tanoue,* 2001 U.S. Dist. Lexis 21870 (U.S.D.C. Dist. of Columbia 2001) to support his requested injunctive relief. In *James*, the jury determined Preston James was qualified for a grade level increase to a GS-11 Supervisory Museum Specialist position with his employer. However, the jury found the employer intentionally discriminated against Mr. James based on his gender. The *James* court granted Mr. James request for injunctive relief, specifically, an upgrade to GS-11 Museum Specialist with his employer. In so doing, the *James* court noted, "...a district court may order a retroactive promotion if it finds that the plaintiff 'would have attained the position but for the defendant's unlawful employment practices.'" *James* at 390 citing *Richerson v. Jones,* 551 F.2d 918, 923 (3d Cir. 1977).

In *Bass*, the jury found Mary Bass was discriminated against by her employer, based upon her race, when the employer excluded her from consideration for the grade 14 position of Chief of the Financial Review Unit. The *Bass* court granted Ms. Bass' request for equitable relief and ordered the defendant to place Ms. Bass in either the position of Chief or in a comparable position at the grade 14 level, in her career field, and in defendant's Washington, D.C. office. In so doing, the *Bass* court noted, that once discrimination has been found, a defendant may only defeat a request for retroactive promotion as equitable relief by setting forth "...clear and convincing evidence that [plaintiff's] qualifications were such that he would not in any event have been selected." *Bass* at *11, citing *Day v. Mathews,* 530 F.2d 1083, 1085 (D.C. Cir.

1976).

In response, Defendant contends the equitable relief Plaintiff seeks is not appropriate. Plaintiff in this matter was not denied any pay or loss of benefits as a result of the retaliatory claim.[3] To the contrary, he received all pay and raises and was promoted, upon being qualified as a Professional Engineer, to the position of Senior Engineer with comparable pay. Moreover, the record is devoid of any evidence Plaintiff was denied a higher position as a result of any alleged retaliation claimed by Plaintiff.

Further, Defendant asserts Plaintiff's allegation that his transfer to the Waste Water Collection Division (hereinafter "WWCD") prevents him from promotional opportunities is misplaced and without supporting evidence.[4] Defendant argues that as a Senior Engineer in WWCD, Plaintiff is in the same category as any other Senior Engineer regardless of the assigned division. Additionally, Defendant contends if he meets the qualifications of a Supervisory Engineer, he may seek such a position consistent with the Civil Services Rules of the City of Cincinnati and the State of Ohio.

Additionally, Defendant asserts the same argument it asserted at trial regarding Plaintiff's comparison of Mr. Lutz and himself as similarly situated individuals. Defendant contends Plaintiff and Mr. Lutz are not similarly situated.

Defendant also finds without merit Plaintiff's reliance upon *James*. Defendant argues in *James*, the jury found Mr. James was qualified for a higher grade level. Currently, as stated above, the jury did not make this finding and the record is devoid of

---

[3] Defendant states the retaliation suffered by Plaintiff is alleged. However, it was only alleged until the jury found Plaintiff was retaliated against by Defendant.

[4] In reviewing Plaintiff's argument, the Court does not see where Plaintiff advanced this assertion.

evidence Plaintiff ever sought promotion to, or was qualified as, a Supervisory Engineer or that retaliation prevented such a promotion.

## III. ANALYSIS

42 U.S.C. §2000e-5(g)(1) provides, in relevant part:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay...or any other equitable relief as the court deems appropriate.

The purpose of Title VII is to make whole an individual who suffered injury as a result of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). "The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury." *Id.* "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.*

Pursuant to Title VII, federal courts are vested with "broad equitable discretion" to order appropriate equitable relief. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976). A district court must strive to grant "the most complete relief possible" in cases of Title VII violations. *Id.* At 764.

Additionally, a judge's disposition of a plaintiff's equitable claim is often affected by the jury's determination as the judge is bound by the issues necessarily decided by the jury. *Miles v. State of Indiana*, 387 F.3d 591, 599-600 (7th Cir. 2004) citing *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499 (7th Cir. 2000); *Lincoln v. Bd. Of Regents of the Univ. Sys. of Georgia*, 697 F.2d 928, 934 (11th Cir. 1983). "However,

when the basis of the jury's verdict is unclear, each of the potential theories supporting the verdict is open to contention 'unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.'" *Miles* at 600, citing *Russell v. Place*, 94 U.S. 606, 609 (1876). "Therefore, when several issues have been litigated, the jury may have supported its verdict by finding in the plaintiff's favor on any one of the issues, but which one is not clear, the court is free to determine the basis of the jury's verdict unless extrinsic evidence clearly resolves the issue." *Id.* n. 5.

Upon review of the *James* and *Bass* cases, the Court concludes they are inapplicable. In *James*, the jury concluded Mr. James was discriminated against by his employer based on gender and found he was qualified for a grade level increase. Similarly, the *Bass* jury found Ms. Bass was discriminated against by her employer based on race and was excluded from consideration for a position. In contrast, the jury in this matter found Plaintiff failed to prove by a preponderance of the evidence Defendant discriminated against him based upon his national origin, but found for him on his retaliation claim. Additionally, as discussed in greater detail below, the jury did not make specific findings as to what behavior of Defendant's the retaliation verdict was based. Accordingly, these circumstances of *James* and *Bass* render their respective analyses inapposite.

In determining whether Plaintiff shall be granted the equitable relief he seeks, *Miles v. State of Indiana*, *supra*, is illuminating. In *Miles,* Robert Miles, an African-American, was employed by the Indiana State Police since 1974. In 1978, he was promoted to Sergeant and assigned to the Operations Center. In early 1981, Officer Miles complained of racial discrimination in the promotional decisions for the Indiana

State Police. He file suit which was later settled without admission of liability. In 1984. Officer Miles was subsequently promoted to First Sergeant.

In December, 1995, Officer Miles filed a complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") and in February, 1996, he filed an internal EEO complaint. In both complaints, Officer Miles alleged racial discrimination. Superintendent Jennings reviewed the allegations and the summary of the investigation but took no further action.

In September, 1996, Superintendent Jennings reassigned Officer Miles to the Records Division as a First Sargent with no supervisory duties. In his previous positions, Officer Miles exercised supervisory responsibilities. In one position, he supervised sixty (60) officers and sixteen (16) civilians. In another, he supervised twelve (12) civilians.

At trial, the jury concluded Officer Miles "prove[d] that his complaints of discrimination were, more likely than not, a motivating factor in the decision of the defendants, State of Indiana, to transfer him...or fail to promote him[.]" *Id.* at 595. However, the jury concluded Officer Miles failed to prove "race discrimination was, more likely than not, a motivating factor" in the State of Indiana's "fail[ure] to promote, upgrade or appoint him." *Id.* n.4.

After the jury verdict, Officer Miles filed a motion requesting equitable relief for, *inter alia*, a promotion. The only equitable relief deemed appropriate by the district court was reassignment to a supervisory position similar to the position Officer Miles held prior to his reassignment by Superintendent Jennings. The district court held current Superintendent Carraway did not act out of racial animus or retaliatory motive when he

did not promote Officer Miles. Instead, the district court concluded the retaliation suffered by Officer Miles was with respect to his assignment to the Records Division without any supervisory responsibility.

On appeal, the *Miles* court affirmed the district court. Due to the manner in which the special verdict was phrased, the *Miles* court concluded the verdict could be read in three possible ways. The jury could have found retaliation (1) in the transfer, (2) in failing to promote, or (3) in the transfer and in failing to promote. The *Miles* court opined if the jury found retaliation only in the reassignment, providing equitable relief of supervisory responsibility would make Officer Miles whole without the need for promotion. In contrast, if the jury concluded failure to promote was the retaliatory action, supervisory duties alone would not make Officer Miles whole. However, the jury, while finding retaliation, did not reveal the basis for the finding. Nevertheless, the *Miles* court held the district court supported its conclusion with evidence from the record that the retaliation suffered by Officer Miles traced itself to his reassignment to the Records Division and was not attributable to the allegation of discrimination with respect to promotion.

Currently, the jury returned verdicts in the favor of Plaintiff for retaliation and in favor of Defendant for national origin discrimination. The special interrogatory for retaliation states, "Plaintiff...proved by a preponderance of the evidence that the Defendant...retaliated against him because he complained of discrimination." Thus, as in *Miles*, the jury did not reveal the basis for its finding of retaliation. Accordingly, in the absence of extrinsic evidence which resolves the issue, the Court must determine the basis of the jury's verdict.

The Court concludes that, based upon the evidence presented at trial, the basis of the jury's verdict was Defendant's retaliation against Plaintiff, after reclassifying him as a CET-4, in transferring him to WWC in August, 2000, and materially diminishing Plaintiff's job responsibilities. However, the evidence does not support the conclusion the basis for the jury's verdict was Defendant retaliated against Plaintiff by either failing to compensate Plaintiff at a rate comparable to Mr. Lutz or failing to promote him to Supervisory Engineer.

The evidence regarding the disparity in compensation between Mr. Lutz and Plaintiff is insufficient to conclude Plaintiff's compensation was an aspect of Defendant's retaliation. At the time of hire, Mr. Lutz had his professional licensure and Plaintiff did not. The record is devoid of any evidence as to how long Mr. Lutz had his professional licensure at the time of hire. As such, the disparity in pay could easily be attributed to the fact Mr. Lutz brought numerous years of experience as a professionally licensed engineer to the table whereas Plaintiff only recently obtained his professional licensure. Additionally, Mr. Lutz is the only example of compensation disparity Plaintiff presented. As such, to conclude Mr. Lutz's compensation was the appropriate rate of pay owed to all Senior Engineers is to engage in speculation. Accordingly, based on the limited evidence with respect to compensation offered at trial, the Court is unable to conclude Plaintiff's compensation was an aspect of Defendant's retaliatory actions.

Additionally, the evidence presented at trial does not support the conclusion the jury's verdict was based on Plaintiff not being promoted to Supervising Engineer. While the next step in the career path available to a Senior Engineer is Supervising Engineer, there was no evidence that all Senior Engineers become Supervising

Engineers. Moreover, the record is devoid of evidence that Plaintiff applied for, and was denied, a Supervisory Engineer position after he obtained his professional licensure. As such, the Court is unable to conclude the jury based its finding of retaliation on Plaintiff's failure to attain the position of Supervising Engineer as the evidence does not support the finding Plaintiff would have attained the position of Supervising Engineer but for Defendant's retaliation.

Therefore, the Court concludes the basis for the jury's finding of retaliation was Defendant's transferring Plaintiff to WWCD and materially diminishing his job responsibilities.

It follows that the next step for the Court is to determine what equitable relief, if any, will make Plaintiff whole. Based upon the analysis set forth above, Plaintiff's request for promotion to Supervisory Engineer and compensation at the rate of $70,000 per annum is not warranted. However, Plaintiff's request for transfer to WWED is appropriate based upon the jury's verdict. Prior to Defendant's retaliatory behavior, the evidence demonstrated Plaintiff was engaged in a successful career at WWED. Defendant's retaliatory actions derailed Plaintiff's career at WWED and significantly altered his job responsibilities. Since his transfer, Plaintiff no longer has any project oversight responsibilities, has been given work for which he is overqualified and has not been given any engineering responsibilities. Accordingly, the Court finds that the transfer of Plaintiff to WWED as a Senior Engineer, with all of the material job responsibilities of a Senior Engineer, is the appropriate equitable relief which will make Plaintiff whole.

Accordingly, the February 7, 2005 Motion of Plaintiff for Equitable Relief (Doc.

77) is **GRANTED IN PART** and **DENIED IN PART**. Defendant is hereby **ORDERED** to transfer Plaintiff, as a Senior Engineer with all of the material job responsibilities of a Senior Engineer, to the Waste Water Engineering Division of the Metropolitan Sewer District within thirty (30) days of the filing date of this Order.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**