UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ALI BAHAR | : | Case No.: C-1-01-798 |
| PLAINTIFF | : | (Judge Watson) |
| v. | | DEFENDANT'S REPLY IN SUPPORT OF IT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW UNDER FED R. CIV P 50(b) AND FOR NEW TRIAL |
| CITY OF CINCINNATI | | |
| DEFENDANT | | |

The Defendant, by and through its counsel, submits the following Reply memorandum in support of its Motion for Judgment as a Matter of Law and for a New Trial.

The Motion for Judgment as a Matter of Law should be granted since the evidence presented at trial could only result in reasonable minds finding for the City.[1]

Plaintiff states that any argument of failure to prove a prima facie case is not subject to review and the proper inquiry must focus on the ultimate question of retaliation. While the legal discussion of this premise as discussed in *Kovacevich v. Kent State University*, 224 F. 3d 806 (6th Cir. 2000) (*citing EEOC v. Avery Dennison Corp.*, 104 F 3d 858, 861 (6th Cir. 1997), has been debated and discussed, accepting Plaintiff's interpretation of the standard of review does not change the argument of Plaintiff's failure to present evidence of retaliation.

As stated by the court in *Kovacevich*: "Of course, there is nothing to prevent the court from considering evidence that also bears on the prima facie case as long as it does

---

[1] *Williams v. The Nashville Network*, 132 F. 3d 1123, 1130.(6th Cir. 1997).

so in order to address the ultimate question of discrimination."[2] Therefore, in reviewing the totality of the evidence before the jury, there is insufficient evidence for any finding that the Defendant engaged in unlawful retaliation.

When addressing the issue of retaliation, it is reasonable and necessary to examine each action that could be claimed as retaliatory and what evidence, if any, was presented to support each claim. Defendant has previously argued the lack of evidence especially as it relates to the decision makers' knowledge of Plaintiff's alleged protected activity.

There is no evidence that the decision makers were aware of any alleged protected activity until at least August 22, 2000. Actions alleged as retaliatory after that date are discussed separately, below.

**Re-Classification & Transfer**

Prior to at least August 22, 2000, no evidence exists to prove that the decision makers had knowledge that Plaintiff sought any protected activity. Therefore, any claim of retaliation by way of Plaintiff's re-classification and transfer cannot be established since both actions occurred prior to such knowledge. (Plaintiff's Exh 7 & 8). Even without referring to the necessary elements of retaliation, common sense dictates that it is impossible to take retaliatory action for seeking a protected activity if the alleged activity is not known. No reasonable juror could find retaliation without Plaintiff proving that the decision makers were even aware of the protected activity.

Plaintiff alludes to the testimony of Julia Johnson as sufficient evidence of the decision- makers' knowledge. A careful review of Ms. Johnson's testimony does not show any evidence of knowledge of the relevant decision makers.

---

[2] *Kovacevich v. Kent State University*, cited supra

Ms. Johnson responded to Plaintiff counsel's inquiry as to the EEO process at MSD before the City EEO Office might become involved. In discussing the process at MSD, Ms. Johnson testified in response to Plaintiff counsel's question on how promptly they ought to start investigation of that nature:

> A. I can only speak to MSD's process, not Mr. Chapman's. With our process, when the employee meets with Mr. Young, the expectation is that he will immediately look into the matter. (Trial Tr. p 41).

Of significance is the fact that Mr. Young had not started at MSD until August 19, 2000, well after Plaintiff had proceeded to the City's EEO Office on July 27, 2000. (Plaintiff's Exh 14, Trial Tr. p.78.). His start date also was after Plaintiff's re-classification and transfer. In addition, there is neither evidence that Plaintiff ever met with Mr. Young nor any evidence of any investigation by MSD personnel. There is no evidence that Mr. Young ever shared Plaintiff's Complaint with any decision maker.

Even if the Jury would be allowed to speculate that Plaintiff had met with an internal EEO officer at MSD beforehand, Ms. Johnson explained the confidentiality of such a process. (Trial Tr. p. 42). Ms. Johnson stated:

> Q. Now, in your department if there is—as to any employee who comes to Mr. Young or whoever the EEO officer is, do you necessarily automatically know that there's been a – an issue raised by an employee?
>
> A. No. The nature of my section is its confidential. And it's really so that the employee can feel that they can at least have a resource and it's not spread or talked. (T. p. 65).

After seeking assistance by the City's EEO Department, Plaintiff testified that he had no information as to whether his EEO Complaint was transmitted to MSD before August 22, 2000.

> Q. Do you have any information that it was sent to MSD prior to August 22nd?

3

    A. I have no idea (Trial Tr. 3-58).

Plaintiff intimated that maybe EEO waited until after he was transferred. (Trial Tr. 3-59). A conspiratorial theory without specific facts has been held by this circuit as appropriate for Summary Judgment.[3] There simply is no evidence that MSD knew of the EEO Complaint before August 22, 2000.

The record is void of any evidence Plaintiff ever met with any MSD representative before his re-classification and transfer and void of any evidence that the decision makers were aware of such a claim before his re-classification and transfer to the Waste Water Collections Division of MSD. To the contrary, Mr. Campbell testified the discussions as to where the EITs were going to land probably started two months ahead of the Civil Service action. (Trial Tr. 3-164). It is only reasonable that some time lapse would be necessary to re-classify several EITs who had not yet obtained their PE licensure.

A reasonable juror could not find that the Defendant had any knowledge of the internal EEO charge. To make such a quantum leap given the evidence would require speculation, at best, and confusion, at worst. As previously argued in Defendant's memorandum in support of this motion, the Plaintiff not having provided any evidence of knowledge of the internal filing before August 22, 2000, the jury could only be left to speculate as to the state of the decision maker's knowledge.

> The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the Plaintiff" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co*., 801 F. 2d 859, 863 (6th Cir. 1986).[4]

---

[3] *Mulhall v.* Ashcroft, 287 F. 3d 543, at 552 (6th Cir. 2002), id
[4] *Mulhall v. Ashcroft, id*. at p. 551.

**There were No Adverse Employment actions after August 22, 2000.**

Any knowledge from subsequent action of protected activity ( EEOC filings in 2001) are easily defensible.  Turning to those acts Plaintiff raises after August 22, 2000, the evidence again fails to support any verdict other than for the Defendant.

Plaintiff's EEOC charge in February 2001 basically addressed his initial complaint of his July, 2000 reprimand, and his transfer and removal of project manager duties. He remained ineligible for these duties assigned to a Senior Engineering position since he lacked the requisite PE License. He complained of being demoted and job duties removed. His alleged demotion  (re-classification to CET-4) was given to all EITs who failed to obtain their PE after ten years. As stated above, the re-classification and transfer to different job duties occurred before any alleged protected activity was sought.

Prior to being licensed, Plaintiff's work as a CET-4 assigned was with that classification. (Tr. Tr.4-42; 4-44; 4-60;4-70, Johnstone; Wiemer; Minges.).

 Even Plaintiff's own witness, Tony Huang, confirmed all the EIT had their duties rolled back from Project Manager after learning people had to work within their classification. (Trial Tr. 2-56-57) The fact Plaintiff wanted to perform previous Engineer in Training or Professionally Licensed Engineering duties, for which Plaintiff was not qualified at the time cannot be an adverse action. It is also important to note that none of Plaintiff's charges filed with the EEOC ever raised an issue of retaliation for failure to return him to the WWE division upon receiving his PE. Failure to exhaust any administrative remedy would prevent Plaintiff from raising this particular claim at trial. The allegation that somehow a CET-4 had no career path to Senior Engineer was not proven. To the contrary, the Table of Organization demonstrated that the path to Senior

5

Engineer from CET-4 status was available. (Def Exh 2042; Trial Tr. 5-35-35). The fact that upon receiving his license Plaintiff was promoted further confirms this fact. Plaintiff submitted no evidence that a reasonable juror could find otherwise.

### Promotion to Senior Engineer

Upon completing Plaintiff's Professional Licensure, Plaintiff was promoted in accordance with MSD policy. He suffered neither adverse action nor any loss of pay or benefits. Although Plaintiff alleged he received a lesser pay increase than others, unrefuted evidence demonstrated his pay increase was commensurate with other promotions. (Def Exh 2093).

The return or lack of return to WWE is not adverse. As a Senior Engineer, Plaintiff was assigned to Stormwater Management Utility (SMU, a division of MSD). There was no change in pay, benefits, promotional opportunities nor significant changes in duties for a Senior Engineer. No juror could reasonably find an adverse action existed by not being assigned the division Plaintiff preferred.

When Plaintiff was assigned to Stormwater Maintenance Utility, he was given the assignment to prepare NPDES permit application to the U.S. E.P.A. He received satisfactory reviews by his supervisor at Storm Water Management and any lack of raises were across the board to all employees due to freezes on the City Budget. (Trial Tr. 3-130).

Whether Plaintiff wanted to be transferred back to Wastewater Engineering and not so assigned does not amount to an adverse employment action. It is well established that transfers without anything more do not constitute an adverse employment action.[5]

### Hiring of Engineer outside of MSD

---

[5] *Kocsis v. Multi-Care Management, Inc.*, 97 F. 3d 876 (6th Cir. 1996)

6

His next charge was on May 31, 2001 alleging discrimination based upon the hiring of Mr. Lutz, a professionally licensed engineer from outside of MSD. The position was for a licensed Professional Engineer. Plaintiff had no such license.

Evidence fails to support any claim of retaliation. In that case, the hiring for an engineer in Wastewater Engineering was at a time when Plaintiff didn't even meet the basic qualifications for the position. Plaintiff was not licensed until early 2002. (Trial Tr. 70; 3-127).

There was *no* evidence to support any retaliation for this alleged adverse act.

**Plaintiff not chosen as "Manhole Rehabilitation Supervisor"**

Plaintiff acknowledged that he voluntarily removed himself from consideration in the promotional hiring process (Trial Tr.3-115-116). By not even engaging in the promotional process, Plaintiff cannot now claim his failure to obtain the position was in retaliation for filing any EEOC claim. Evidence at trial does not support *any* retaliation as alleged.

**Position of Facility Manager**

No evidence was presented that the hiring party at Facility Management was aware of any EEOC filings. (Trial Tr.3-76-77). Mr. Campbell testified that he was unaware Plaintiff had applied for the position, that he and his staff never contacted the Facility Management Department and no one contacted Mr. Campbell or his staff before filing of any complaint. (Trial Tr. 5-39)

**The Jury Instructions Were Plain Error Resulting In Confusion And Prejudice To The Defendant.**

Jury Instructions are reviewed as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for

7

aiding the jury in reaching its decision. A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial.[6]

**a.   Confusion of instruction imputing knowledge of governmental agent to the Defendant.**

A key and vital fact necessary for any liability for retaliation requires knowledge of the decision-makers. The instructions included the following language when setting forth the elements of retaliation:

(2) Defendant knew Plaintiff engaged in protected conduct….." (Jury Instructions at p.11). There existed undeniable confusion when the court instructed the jury knowledge of an agent or manager of a governmental body is "imputed" to the corporation. (Jury Instructions, at p. 4).

This instruction, in light of the law requiring not just any agent but the decision-maker's knowledge to exist for liability,[7] resulted in confusion, misleading the jury as to an essential element to the prejudice of the Defendant. Looking at the instructions as a whole, it was plain error resulting in the jury being advised that any knowledge of any agent is sufficient. As to the retaliation claim, this is not just confusing; it is a misstatement of the law. This is especially critical in the present case since Plaintiff made his complaint with a department of the City beyond the knowledge of the decision-makers prior to his reclassification and transfer to WWC on August 18, 2000.

Accepting knowledge of the City's EEO department as imputed to the decision makers would then incorrectly lead the jury to conclude they were on notice. This

---

[6] *Kitchen v. Chippewa Valley Schools*, 825 F. 2d 1004,1009, 1011 citing *Blackwell v. Sun Elec. Corp.,* 696 F. 2d 1176, 1181 (6th Cir. 1983) and *DSG Corp. v. Anderson*, 754 F. 2d 678 (6th Cir. 1985).

[7] Mulhall v. Ashcroft, *cited supra.*

instruction could either have been left out or otherwise explained to the jury. Either way, based on the ultimate issues of retaliation before the jury, insurmountable prejudice resulted to the Defendant.

As previously argued, without knowledge of the July 27, 2000 filing with internal EEO until August 22, 2000, the question of proximity is moot.

**b.     Instructions as to "pretext" and burden of Plaintiff for the retaliation claim were plain error resulting in confusion and prejudice to the Defendant.**

Plaintiff has cited authority that a court need not include in instructions the shifting of the burden of proof.[8] The difference in the present case is that the court did instruct as "pretext" in Plaintiff's claim for National Origin Discrimination but made no reference when it instructed as to Plaintiff's retaliation claim.

Therefore, this difference in instructions for one claim and not the other would result in the jury not being adequately instructed on the issue resulting in confusion to the prejudice of the Defendant. The jury can only be left with the understanding that while a burden shifting occurs for the National Origin claim the same is not true for retaliation. The jury then can find that all that is necessary for proving retaliation is the elements presented and the "close proximity" of the charge to any adverse action.

**c.     Instructions as to "causal connection" were plain error.**

As given, the Jury instructions allow Plaintiff to meet the "causal connection" prong of retaliation merely by having a close proximity in time to the retaliatory action.

While close proximity in time creates an inference of a causal connection between two events, temporal proximity alone will not support an inference of retaliatory

---

[8] *Kitchen v. Chippewa Valley Schools, id*

9

discrimination when there is no other compelling evidence.[9] The instruction as given especially prefaced with the language "The burden of proving a causal relationship between protected activity and an adverse employment action is not intended to be difficult" leaves the jury with the incorrect assumption, that close proximity is all that is necessary to prove retaliation. Such language could only confuse the jury and result in prejudice to the defendant.

**Conclusion.**

Plaintiff's re-classification to duties as a CET-4 and his transfer to WWC with removal of prior responsibilities occurred prior to Plaintiff presenting evidence of any knowledge. Even if the court assumed that past practice resulted in parties being advised of an internal EEO, there was no investigation in this case. Mr. Young didn't even start until 8/19/2000, after the decision to re-classify and transfer occurred. This leaves only the lack of Project Manager work, which was assigned a licensed PE engineer in May of 2001. Clearly Plaintiff did not qualify at that time.

Next is Plaintiff's voluntary withdrawal from the hiring process for the Manhole Rehabilitation Supervisor position. Again, Plaintiff did not qualify although admittedly he was asked to participate (Trial Tr. 3-115).

His promotion was granted with all pay from the date of passage of his licensure. Allegations of the amount of increase were undisputed as consistent with all employees promoted. (Def. Exh2093).

---

[9] *Nguyen v. City of Cleveland*, 229 F. 3d 559 (6th Cir. 2000).

Lastly, the lack of knowledge regarding the position of Facility Management was unrefuted. Based on all the evidence, reasonable minds could only find no evidence of retaliation.

In the event the Court would not grant judgment as a matter of law, there was sufficient plain error in the jury instructions to require in the alternative, a remand for a new trial as to the limited issue of retaliation.

 Respectfully Submitted,

JULIA L. McNEIL (0043535)
City Solicitor


/s/ Augustine Giglio
AUGUSTINE GIGLIO (0031911)
TERRANCE A. NESTOR
(0065840)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334
Fax: (513) 352-1515
Email: gus.giglio@cincinnati-oh.gov
Trial Attorneys for the Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24th, 2005 a true and accurate copy of the foregoing Reply memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

\s\ AUGUSTINE GIGLIO
AUGUSTINE GIGLIO (0031911)
Sr. Assistant City Solicitor