# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Ali Bahar,

    Plaintiff,

v.

City of Cincinnati,

    Defendant.

Case No. 1:01cv798

Judge Michael H. Watson

## OPINION AND ORDER

Before the Court are the following:

1. The March 9, 2005 Motion of Defendant City of Cincinnati (hereinafter "Defendant" or "City") for Judgment as a Matter of Law Under Fed.R.Civ.P. 50(b) (Doc. 83). Plaintiff Ali Bahar (hereinafter "Plaintiff") filed a Memorandum in Opposition on May 13, 2005 (Doc. 94). Defendant filed a Reply Memorandum on May 24, 2005 (Doc. 96).

2. The March 18, 2005 Motion of Defendant for New Trial Under Fed.R.Civ.P. 59(a) (Doc. 86). Plaintiff filed a Memorandum in Opposition on May 13, 2005 (Doc. 94). Defendant filed a Reply Memorandum on May 24, 2005 (Doc. 96).

## I.   FACTS

Plaintiff, a native born Iranian, has been employed by Defendant as a mechanical engineer through the Metropolitan Sewer District ("MSD") since 1988. Plaintiff was originally hired as an Engineer-in-Training (hereinafter "EIT").

On July 10, 2000, Plaintiff received a written reprimand from MSD for failure to follow procedures regarding obtaining a supervisor's written authorization for a change order to a work contract. Tony Huang, a supervisor investigating the change order, testified there had been verbal, but not written, approval of the change order and that three or four other employees also failed to obtain written authorization yet were not disciplined. Plaintiff filed an internal EEO Complaint on July 27, 2000 (hereinafter "EEO Complaint") against his supervisor, Bob Campbell, Deputy Director of MSD, alleging national origin discrimination based on this discipline.

On August 18, 2000, Defendant reclassified Plaintiff and five other employees from EIT to Senior Engineering Technician (hereinafter "CET-4"). At this point in time, Plaintiff had been working as an EIT for twelve and a half years. This was a lateral move without loss of pay. Defendant maintained the reclassification was the result of state and Civil Service regulations which require an EIT obtain a professional engineer's (hereinafter "PE") license within ten years. Otherwise, the EIT must be moved to a different position with the title of Civil Engineering Technician, Senior Technician or Senior Engineering Technician.

In additional to the reclassification, Plaintiff was transferred from the Wastewater Engineering Division (hereinafter "WWE") to the Wastewater Collection Division (hereinafter "WWC"). This transfer removed engineering work from his job duties. By contrast, all native-born employees reclassified with Plaintiff remained in the divisions to which they had been assigned prior to reclassification and they continued performing engineering work. The only other foreign-born employee reclassified with Plaintiff, was transferred later.

## III. PROCEDURAL HISTORY

Plaintiff filed this action on November 20, 2001 (Doc. 1) alleging national origin discrimination and retaliation. Defendant filed a Motion for Summary Judgment on November 7, 2003 (Doc. 19), which was denied on January 12, 2004 (Doc. 25).

On January 19, 2005, trial in this matter commenced. On January 26, 2005, the jury returned a verdict in favor of Defendant and against Plaintiff on his national origin discrimination claim and a verdict in favor of Plaintiff and against Defendant on Plaintiff's retaliation claim. The jury awarded Plaintiff $200,000 in compensatory damages.

## III. ANALYSIS

### A. Legal Standards

#### 1. Fed. R. Civ. P. 50(b): Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004) (internal quotation omitted).

#### 2. Fed. R. Civ. P. 59(a): New Trial

A district court ruling on a motion for new trial "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir. 1993). Further, the district court should not grant a motion for new trial merely because "'different inferences and conclusions could have been

drawn or because other results are more reasonable.'" *Id.* (quoting *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992).

### B. Retaliation

DefendanT argues judgment as a matter of law or a new trial is appropriate as Plaintiff failed to prove a *prima facie* case of retaliation. Specifically, Defendant contends Plaintiff failed to present competent, reasonable and probative evidence of knowledge of the decision-makers of his protected activity before he was transferred. Defendant argues the undisputed evidence at trial was that Plaitniff was advised of his transfer by at least August 18, 2000, four days before notice was sent by Defendant's EEO office to the Director of MSD, Patrick Karney. Defendant asserts the testimony of Messrs. Karney and Campbell reveals they were unaware of the EEO Complaint at the time of Plaintiff's transfer. As such, Defendant contends there is no evidence other than conjecture to allow the jury to find any knowledge of the decision-makers.

Further, Defendant contends Plaintiff failed to provide evidence that the alleged retaliatory actions amounted to an adverse action as defined by law. Defendant asserts the undisputed facts remain that Plaintiff is still currently employed with MSD, he suffered no loss of pay, benefits, nor any loss of promotional advancement. Defendant argues Plaintiffs's perception of his duties and whether they are less than favorable is insufficient to establish an adverse action.

Additionally, Defendant maintains there is no evidence of a causal connection between his protected activity and transfer.

Contrary to Defendant's argument, "after a trial on the merits, a reviewing court should not focus on the elements of the prima facie case but should assess the ultimate

question of discrimination." *Kovacevich v. Kent State University*, 224 F.3d 806, 821 (6th Cir. 2000), *citing EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). As the *Avery Dennison* court opined:

> A prima facie case is defined aS 'sufficient evidence in the type of case to get plaintiff past a motion for directed verdict in a jury case...it is the evidence necessary to require defendant to proceed with his case.' The finding that plaintiff has proven a prima facie case forces the defendant to proceed with its case. It necessarily follows then, that the defendant is not entitled to judgment as a matter of law or summary judgment if a plaintiff has proven its prima facie case. Following a trial on the merits, the district court, therefore, cannot return to a consideration of whether plaintiff has proven its prima facie case. This is a preliminary matter which cannot be revisited at a later time.

104 F.2d at 861. Instead, the focus is on the ultimate question of whether the defendant intentionally discriminated against plaintiff. *United States Postal Service Brd. v. Aikens*, 460 U.S. 711, 714 (1983).

Turning to Plaintiff's claim for retaliation, the Court concludes Defendant is not entitled to either judgment as a matter of law or to a new trial. At this post-verdict stage of these proceedings, viewing the evidence in the light most favorable to Plaintiff, the Court concludes genuine issues of material fact existed for the jury and that reasonable minds could not come to but one conclusion in favor of Defendant. Additionally, an examination of the evidence at trial does not support the determination the verdict was against the clear weight of the evidence.

As stated earlier, the focus is on the ultimate question of whether Defendant retaliated against Plaintiff for engaging in protected activity. Upon review of all the evidence, a reasonable juror could conclude Plaintiff was retaliated against for filing the EEO Complaint against Mr. Campbell.

First, the testimony of Julia Johnson, Superintendent of the Wastewater Administration Division[1], supports the conclusion Mr. Campbell was aware of the EEO Complaint prior to Plaintiff's transfer from WWE to WWC:

Q.[Plaintiff's counsel]: Does Mr. Young[2] then in the normal course of things notify the person who is accused of doing the discrimination?

A.[Ms. Johnson]: As part - - yes, part of that investigation process is to talk and go see, yes. In that area, I'm sorry.

Q.: And that would be they're supposed to do that promptly?

A.: Yes.

Q.: Okay. Do you have any rule of thumb on how promptly they ought to start investigation of that nature?

A.: I can only speak to MSD's process, not Mr. Chapman's. With our process, when the employee meets with Mr. Young, the expectation is that he will immediately look into the matter.

***

Q.: And sometimes the notifications to the person who is accused is simply advise before they sit down, you know, so and so, I want to inform you that Mr. Bahar has filed a compliant against you and we need to meet sometime in the future?

A.: Yes. That's correct.

---

[1] Ms. Johnson's position is the "only nontechnical support service for the utility and is over hiring, finances, inventory management, safety, training, and EEO." Additionally, human resources is also part of her responsibilities. (Tr. 5)

[2] Ms. Johnson is referring to Wendell Young, the Equal Employment Opportunity employee who worked directly for Ms. Johnson at the Metropolitan Sewer District. (Tr. 40)

Q.: Okay. In other words, the person might be notified of the complaint before they're really asked to officially respond?

A.: That's correct.

(Tr. 40-41)

Second, the testimony offered by Defendant's witnesses regarding the reason for reclassifying EITs to CET-4s was inconsistent. Ms. Johnson testified Mr. Karney, came to her asking about the ten-year rule for EITs. (Tr. 4) In contrast, Mr. Karney testified Human Resources approached him regarding the rule and indicated MSD needed to reclassify the employees. (Tr. 4-161) Additionally, Ms. Johnson stated the reason for the reclassification was to be able to hire licensed engineers. (Tr. 22) However, Mr. Campbell disagreed with Ms. Johnson's testimony when questioned as to why EITs need to be reclassified in order to hire professional engineers. (Tr. 3-171) Moreover, between August 18 and December 31, 2000, Mr. Campbell acknowledged that no professional engineers were hired. (Tr. 3-170) Further, Mr. Campbell testified that in 2001, only three or four professional engineers were hired, notwithstanding the fact six EITs were reclassified. (Id.)

Further, Plaintiff's transfer to WWC from WWE could be considered as retaliatory by a reasonable juror. The evidence established WWC was a less desirable division than WWE. (Tr. 3-175) Additionally, Plaintiff was the only reclassified EIT to be transferred from WWE. (Tr. 48-49; 3-174) The testimony elicited to explain how this came to be was damaging. Mr. Campbell testified that Stephen Minges, WWC Superintendent, requested Plaintiff. (Tr. 3-175) At trial, Mr. Minges testified on direct examination that he approached Mr. Campbell and specifically requested Plaintiff be

transferred to WWC to fill a vacant CET-4 position. (Tr. 4-68-70) However, Mr. Minges conceded his trial testimony was inconsistent with his deposition testimony:

> Q.[Plaintiff's counsel] And during the discussions with Mr. Campbell that resulted in [Plaintiff] being placed in that vacant CET-4 position, who first mentioned [Plaintiff]?
>
> A. At that time I said, 'I don't have any idea.'

(Tr. 4-77) Nonetheless, Ralph Johnstone, Plaintiff's initial supervisor at WWC, testified in direct contradiction to Mr. Minges' trial testimony. He stated that at the time Plaintiff was transferred to WWC, there was no vacant position. (Tr. 4-54, 68)

Additional retaliation could be found by a reasonable juror in the fact that Plaintiff was stripped of any meaningful work when he was transferred to WWC. His position with WWC did not permit him to utilize his engineering expertise, which he had been engaged in for the previous twelve and a half years. (Tr. 3-12-13). Moreover, as there was no vacant position Plaintiff was filing upon his transfer, a period of time passed before work was assigned to Plaintiff. (Tr. 4- 54) Eventually, Plaintiff was told to shadow Tim Beck, who is a CET-2, two levels lower than Plaintiff's CET-4, and works in the Manhole Rehabilitation Program. (Tr. 3-12-13) This assignment required no mechanical engineering skills (Tr. 3-13; 4-56) The pattern continued. After concluding his shadowing of Mr. Beck, several more months passed with no work assigned to Plaintiff. He was then assigned to Jerry Weimer, with his primary task being map making. (Tr. 3-13-15; 4-63) Again, this required no mechanical engineering skills. (Tr. 4-63)

Further, a reasonable juror could determine Defendant retaliated against Plaintiff when he was not promoted upon receiving his PE license. Plaintiff took the

examination in October, 2001, and was notified he passed on January 12, 2002. (Tr. 2-15; Ex. PX11) However, notwithstanding the fact Plaintiff notified MSD he had obtained his PE license and requested a transfer to WWE as a Senior Engineer, Mr. Campbell did not promote Plaintiff. (3;16-18, 189-190) Instead, Plaintiff was promoted by the Civil Service Commission on March 31, 2002, over Mr. Campbell's objections. (Tr. 3;18,189)

Additionally, with existing vacant Senior Engineer positions in WWE when Plaintiff requested his transfer, he was nonetheless transferred to the Stormwater Management Division (hereinafter "SMU"). (Tr. 3; 183-184. 190) Plaintiff had no prior experience in SMU and the project to which he was assigned required no mechanical engineering skills. (Tr. 3;19-21) Plaintiff's supervisor recommended Plaintiff attend training courses due to his inexperience and the fact the project was new, however, Mr. Campbell denied the request. (Tr. 4;11-12)

Finally, a reasonable juror could determine Mr. Campbell's refusal to transfer Plaintiff to WWE was in retaliation for the filing of the EEO Complaint:

> Q. [Plaintiff's Counsel] But isn't it true, sir, that what you testified under oath in your deposition was that you didn't bring [Plaintiff] back in the wastewater engineering because you did not trust him?
>
> A. That is correct. We didn't - - I did not trust [Plaintiff] to continue - - to work in doing what he was previously doing. I did not trust him. And that was, again, part of that alternative analysis that we did.
>
> Q. You did not trust him to do what he had done before very successfully?
>
> A. That's correct.

(Tr. 3; 186)

Accordingly, the record is replete with evidence upon which a reasonable juror could conclude Defendant retaliated against Plaintiff for engaging in protected activity, specifically the filing of the EEO Complaint. As such, reviewing the evidence in the light most favorable to Plaintiff, the Court again concludes there were genuine issues of material fact for the jury, and reasonable minds could not come to but one conclusion in favor of Defendant. Finally, the jury's verdict for Plaintiff on his retaliation claim is not against the clear weight of the evidence. Thus, granting a new trial is not appropriate.

### C.     Jury Instructions

Fed. R. Civ. Pro. 51 governs objections to jury instructions:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court, at its election, may instruct the jury before or after argument, or both. No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Although the language of Rule 51 suggests that litigants must timely "use it or lose it," a litigant's failure to object to a jury instruction does not create a jurisdictional bar to review. See, e.g., City of Springfield v. Kibbe, 480 U.S. 257, 259, 94 L. Ed. 2d 293, 107 S. Ct. 1114 (1987). This circuit has made an exception to the principle of non-reviewability in cases of "plain error." See Harp v. Kroger Co., 489 F.2d 1104, 1105 (6th Cir. 1974) (applying "plain error" standard to a review of jury instructions); Wheeler v. McKinley Enterprises, 937 F.2d 1158, 1166 (6th Cir. 1991) (holding that because the jury instructions did not provide a basis in law for the jury to reach its decision, the district court's failure to clarify them constituted plain error). Plain error is an "obvious

and prejudicial" error that requires action by the reviewing court "in the interests of justice." See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987) (quoting O'Brien v. Willys Motors, Inc., 385 F.2d 163 (6th Cir.1967)).

In determining whether plain error occurred currently, the Court must review the jury instructions "as a whole in order to determine whether they adequately inform the jury of the relevant consideration and provide a basis in law for aiding the jury in reaching its decision." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir. 1987), citing Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir. 1983).

The Court notes Defendant does not assert it objected to the jury instructions at trial and, as such, a standard of review other than plain error should apply. Defendant contends the jury instructions were plain error for three reasons. First, in that they failed to provide any instruction as to the necessary requirement of Plaintiff to bear the burden of proof to overcome any legitimate reasoning for Defendant's actions alleged to have been retaliatory. Specifically, Defendant argues the jury instructions as to the retaliation claim are silent as to the shifting burden of proof if Plaintiff establishes a prima facie case. The instructions discuss pretext when describing the elements of Plaintiff's claim of national origin discrimination, however, the discussion of pretext is absent when the retaliation is described. As such, Defendant contends the jury had no opportunity to even consider if Plaintiff provided sufficient evidence to prove any pretext for the retaliatory action claimed.

Plaintiff argues the instruction is not plain error as the Sixth Circuit determined it is not necessary that an instruction track the McDonnell Douglas paradigm. In support, Plaintiff relies upon Kitchen v. Chippewa Valley Schools, 825 F.2d 1004 (6th Cir. 1987).

In determining whether the alleged failure to instruct on the burden shifting is plain error, the analysis set forth by the *Kitchen* court is instructive. In *Kitchen*, appellants argued the trial court failed to properly instruct the jury on the shifting burden of proof requirements with respect to the disparate treatment and retaliation claims. In concluding the trial court's instructions were not erroneous, the *Kitchen* court noted the holdings of other courts that "jury instructions in discrimination cases need not always precisely follow the *McDonnell Douglas* guidelines." *Id.* at 1011-12 (citations omitted). Further, the *Kitchen* court cited the succinct analysis of *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979), regarding the problems associated with applying *McDonnell Douglas* to the jury setting:

> *McDonnell Douglas* was not written as a prospective jury charge; to read its technical aspect to a jury...will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination.

*Loeb* at 1016. As such, the *Kitchen* court concluded '[i]nstructions are not erroneous 'if they adequately inform the jury of the relevant consideration and provide a basis in law for aiding the jury in reaching its determination.;" *Kitchen* at 1012, citing *Blackwell*, 696 F.2d at 1181.

In this matter, the ultimate issue before the jury was whether Defendants retaliated against Plaintiff for the filing of the EEO Complaint. The jury was instructed that Plaintiff, to establish his retaliation claim, had to show the following by a preponderance of the evidence:

1. Plaintiff engaged in conduct protected by Title VII of the Civil Rights Act of 1964;
2. Defendant knew Plaintiff engaged in protected conduct;
3. Plaintiff was subjected to an adverse employment action at the time, or after, the protected conduct took place; and
4. Defendant took an adverse employment action against Plaintiff because of the Plaintiff's protected conduct.

These instructions properly instructed the jury on the ultimate question of retaliation. As such, the instructions are not plain error regardless of the failure to instruct on the shifting burdens of proof.

Second, Defendant argues the instructions contained plain error because they confused knowledge of the Defendant municipality and that of its agents with that of the decision-makers. Defendant contends the instructions allowed the jury to conclude that any knowledge of a corporation's agents or employee's is the same as knowledge to the corporation, which was plain error. Defendant asserts, that while knowledge can be imputed under certain factual situations, in a retaliation claim, only the knowledge of the decision-makers can fulfill the knowledge element of a *prima facie* claim of retaliation. As such, this instruction, without further explanation, enabled the jury to give the necessary knowledge of a protected activity by the mere fact someone in the City may have been aware of Plaintiff's claim. However, Defendant asserts there is an absence of evidence of the decision-makers' knowledge of the filing of the EEO Complaint. As such, Defendant asserts the instructions permit the jury to incorrectly find a necessary element of Plaintiff's retaliation claim. Defendant contends such an error in the instruction allowed the jury to be misinformed as to whether the requisite knowledge of the protected activity did in fact exist.

In response, Plaintiff argues the instruction is routinely used in the Southern District. Moreover, Plaintiff contends it merely explains that knowledge on the part of the management employees of the City is imputed to the legal entity which is the actual Defendant in this case. Further, Plaintiff asserts the instruction is not plain error as it does not misapply the law as to a core issue which results in substantial prejudice to the Defendant.

Upon review, the instruction is not plain error. First, as already discussed, the jury did not need to be instructed on the *prima facie* elements of retaliation. Instead, the jury needed to be instructed on the ultimate issue of retaliation. Second, as discussed above, the evidence supports the conclusion Mr. Campbell was aware of the EEO Complaint prior to Plaintiff's transfer. As such, there is evidence that the decision-makers had knowledge of the filing of the EEO Complaint. As such, the instruction did not allow the jury to incorrectly find a necessary element of Plaintiff's retaliation claim. Contrary to Defendant's argument, the instruction did not allow the jury to be misinformed as to whether the requisite knowledge of the protected activity did in fact exist.

Finally, Defendant argues the instruction failed to correctly state the limitation on inference by close proximity in time. Defendant asserts the instruction as given allowed the jury to misconstrue the proper standard and allowed them to interpret the instruction to permit proof of a causal connection to be made solely by time proximity. Thus, Defendant maintains the absence of the full citation created plain error.

In response, Plaintiff argues the instruction is consistent with Sixth Circuit law, does not create substantial prejudice to the Defendant, and is therefore not plain error.

In support, Plaintiff cites to *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) and *Ford v. General Motors Corp.*, 305 F.3d 545, 554-555 (6th Cir. 2002).

In *Ford*, the plaintiff produced evidence of a causal connection between his EEOC complaint and the adverse employment action, an increased workload, heightened scrutiny and constructive discharge. In discussing the issue of temporal proximity, the *Ford* court noted "[a]lthough 'temporal proximity alone will not support an inference in the face of compelling evidence ' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'" At 554-55, citing *Moon v. Transport Drivers, Inc.* 836 F.2d 226, 229 (6th Cir. 1987)(citations omitted).

Additionally, the *Nguyen* court opined, while noting the reaffirmance of the holding that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence", at 566, quoting *Parnell v. West*, 1997 U.S. App. Lexis 12023 (6th Cir. 1997), that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an] inference [of retaliatory discrimination]...." *Nguyen* at 567.

Upon consideration, the instruction was not plain error. The record demonstrates a temporal proximity between the filing of the EEO complaint and Plaintiff's transfer which is not countered by compelling evidence to the contrary. Moreover, as discussed above, the record contains sufficient evidence to support the conclusion Defendant retaliated against Plaintiff for filing the EEO complaint, which is not limited to the close temporal proximity of Plaintiff's transfer to WWC.

## IV. CONCLUSION

Defendant contends it is entitled to judgment as a matter of law or, alternatively, a new trial. Upon consideration of the arguments advanced by the parties, the evidence presented in this matter and relevant case law, the Court concludes judgment as a matter of law is not appropriate as viewing the evidence in the light most favorable to Plaintiff, there were genuine issues of material fact for the jury, and reasonable minds could not come to but one conclusion in favor of Defendant. Further, comparing the opposing proofs and weighing the evidence, the Court does not determine the verdict in favor of Plaintiff is against the clear weight of the evidence. The evidence presented in this matter supports the ultimate question of whether Defendant retaliated against Plaintiff for engaging in a protected activity. Finally, a review of the jury instructions reveals there was no plain or prejudicial error which requires action by this Court in the interests of justice.

Accordingly, the March 9, 2005 Motion of Defendant for Judgment as a Matter of Law Under Fed.R.Civ.P. 50(b) (Doc. 83) is hereby **DENIED** and March 18, 2005 Motion of Defendant for New Trial Under Fed.R.Civ.P. 59(a) (Doc. 86) is hereby **DENIED.**

Finally, the stay imposed by the Court's June 21, 2005 Order (Doc. 97) with respect to February 4, 2005 Application of Plaintiff for Attorney's Fees (Doc. 76), is hereby **VACATED**. As such, within 30 days of this Opinion and Order, Plaintiff shall file either an amended or additional application for fees or a notice that he is only seeking the fees set forth in the February 4, 2005 Application (Doc. 76). If appropriate,

Defendant shall file its Memorandum in Opposition within 21 days of Plaintiff's filing and Plaintiff shall file his Reply Memorandum within 11 days of Defendant's filing.

**IT IS SO ORDERED.**

_/s/ Michael H. Watson_
Michael H. Watson, Judge
United States District Court